Louis Eugene RUSSELL,
Petitioner–Appellant,

v.

Tom ROLFS, Superintendent,
Respondent–Appellee.

No. 88–3936.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1989.

Decided Jan. 9, 1990.

John Midgley, Smith, Midgley & Pumplin, Seattle, Wash., for petitioner-appellant.

John M. Jones, Asst. Atty. Gen., Corrections Div., Olympia, Wash., for respondent-appellee.

Before REINHARDT, KOZINSKI and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Louis Eugene Russell, a Washington state prisoner, appeals the district court's dismissal of his 28 U.S.C. § 2254 habeas corpus petition. The district court found that the issues raised in the petition were waived by Russell due to a state procedural default. On appeal, Russell disputes this finding, arguing that the Washington Supreme Court reached the merits of his claim, and, in the alternative, that a procedural barrier should not deny him relief. Russell also contends that sufficient cause and prejudice exist to entitle him to a federal hearing on the merits, and he suggests that the state should be estopped from raising the issue of procedural bar to deny him relief. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

I

The charges against Russell stemmed from a series of events which began when Russell was invited to the home of two strangers, Kenneth and Sherry Hanks. The evening ended with the death of Mr. Hanks, and with the severe stabbing and alleged rape of Mrs. Hanks.

Mrs. Hanks, the prosecution's main witness, testified that Russell killed her husband, raped her at knifepoint, and then stabbed her. Russell, testifying on his own behalf, related a different story. He alleged that Mr. Hanks invited him to a home to have intercourse with a "girl," who turned out to be Mrs. Hanks. Russell claimed that after he complied with the invitation, Mr. Hanks returned and became so enraged that he stabbed Mrs. Hanks and proceeded to attack Russell, who wrestled the knife away. Russell then testified that in self-defense he stabbed Mr. Hanks repeatedly, causing Mr. Hanks's death. Russell was apprehended while in flight from the victims' home.

The state charged Russell with first-degree murder, first-degree rape, and attempted rape. A jury acquitted him of the first-degree murder of Mr. Hanks. When the jury could not reach a verdict on the other two charges, a mistrial was declared. In a second trial, on amended charges, Russell was convicted by the jury of second-degree murder, first-degree attempted murder, and rape in the first degree. Consequently, Russell was sentenced to two concurrent maximum sentences of twenty years for attempted murder and rape while armed with a deadly weapon.

Russell appealed his conviction, raising issues regarding all three offenses. The Washington Court of Appeals affirmed his convictions. *State v. Russell*, 33 Wash. App. 579, 657 P.2d 338 (1983).

Russell then sought discretionary review of his second-degree murder conviction in the Washington Supreme Court. He raised only three of the seven issues argued before the court of appeals. Russell allegedly believed, however, that all the issues he argued before the Washington Court of Appeals were preserved for argument before the supreme court. After refusing to hear argument on issues not included in his petition, the court reversed the second-degree murder conviction and remanded for a new trial. His convictions of rape and attempted murder remained intact. *State v. Russell*, 101 Wash.2d 349, 678 P.2d 332 (1984). The state did not seek a retrial on the second-degree murder charge.

Russell next filed a petition for writ of habeas corpus seeking federal review of his two remaining state convictions. Russell raised three grounds for relief: (1) denial of the presumption of innocence in violation of the Fifth and Fourteenth Amendments; (2) denial of due process in violation of the Fifth and Fourteenth Amendments based on alleged prosecutorial misconduct; and (3) denial of the right to confront and cross-examine witnesses in violation of the Sixth and Fourteenth Amendments. Although these claims were argued before the court of appeals, they had not been raised in the petition before the Washington Supreme Court. The United States District Court denied without prejudice Russell's petition for failure to exhaust state remedies, apparently relying on the state's argument for dismissal based on the existence of an *"adequate* and *available"* remedy in state court through Washington's personal restraint petition procedure.

Russell then attempted—as apparently invited—to raise these issues before the Washington Supreme Court, but the state now took the position that he had no remedy by way of such a petition. The supreme court transferred the case to the Washington Court of Appeals which found Russell procedurally barred at that level because the issues were the same ones raised in his direct appeal to that court. On this basis, the court of appeals denied his personal restraint petition.

Russell next filed for discretionary review before the Washington Supreme Court, which, after stating that the court of appeals had not erred in concluding that Russell was procedurally barred from relitigating the issues in *that* court, declined to exercise its own discretionary jurisdiction.[1] The court additionally stated that an "ends of justice" exception that might have given him relief from his default was not available because the court of appeals' treatment appeared to be fully consistent with applicable case law.[2]

Russell then returned to federal court, raising in a second habeas corpus petition the same issues on which he had previously attempted to rely. The attorney general resisted his petition, arguing that Russell was procedurally barred from presenting his claim in federal court. A United States Magistrate decided that the Washington Supreme Court had reached the merits of Russell's claims; therefore, he was entitled to federal review on the merits. The district court disagreed, however, and dismissed the petition based on its interpretation of the final state court finding to the effect that Russell was procedurally barred from review. This appeal followed.

## II

This court reviews a district court's denial of a petition for writ of habeas corpus *de novo*. *Bruni v. Lewis*, 847 F.2d 561, 563 (9th Cir.), *cert: denied,* — U.S. —, 109 S.Ct. 403, 102 L.Ed.2d 391 (1988), — U.S. —, 109 S.Ct. 1319, 103 L.Ed.2d 587 (1989); *Campbell v. Kincheloe*, 829 F.2d 1453, 1457 (9th Cir.1987), *cert. denied,* — U.S. —, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988).

The district court determined there was no material fact in dispute as to whether Russell failed to comply with a reasonable state procedure and dismissed the petition. We disagree and conclude that under Washington law no procedural default occurred. In the alternative, we find the state is estopped from arguing · Russell failed to exhaust his state remedies.

## III

The first issue we address is whether the Washington Supreme Court, as the "last state court rendering a judgment in the case," "clearly and expressly" relied on procedural default to deny Russell relief. *Harris v. Reed,* — U.S. —, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (citations omitted). We find that it did not. The court's denial, as reflected in its commissioner's report dated July 24, 1987 and in the court's subsequent refusal to modify that report on October 6, 1987, was actually based on two distinct grounds. First, the court found no error in the state court of appeals' application of *In re Taylor,* 105 Wash.2d 683, 717 P.2d 755, 757 (1986),[3] agreeing that Russell's issues were procedurally barred in *that* intermediate court as having been previously "heard and determined." Second, the court elected not to exercise its discretionary power to review Russell's claims on the merits.

It is significant in our interpretation that the Washington Supreme Court decided not

---

1. A fourth issue, which alleged a violation of the Constitution based on the cumulative effect of the first three violations, was also found to be procedurally barred by the court of appeals.

2. Russell contends this statement constitutes a determination on the merits. The state responds that the statement is dicta, and no more than an application of the required "ends of justice" test.

3. *Taylor* only bars issues which have been "heard and determined" by the reviewing court. The record shows that Russell's present claims were not presented to the Washington Supreme Court as part of his direct appeal. Thus, the Washington Supreme Court, unlike the state court of appeals, cannot have rejected Russell's claims on *Taylor* grounds.

to exercise its discretionary power—as contrasted with refusing to hear Russell's case because of a procedural bar—that the commissioner's report makes the following statement after its discussion of the *Taylor* issue:

> Further, the Court of Appeals' treatment in Mr. Russell's [initial] appeal of each of his three renewed legal issues still appears to be fully consistent with applicable case law. The more recent cases Mr. Russell cites do not change the governing rules of law. (Citations omitted).

In the procedural posture in which this matter found itself before the Washington Supreme Court, it cannot be said that this language is of little consequence. It is even reasonably susceptible of a conclusion that the supreme court not only was afforded the opportunity to address petitioner's constitutional claims, but in fact did so.[4] It is not, however, necessary to go that far to decide this case. It is sufficient to note that the "clear and express" statement relying on procedural default required by the Supreme Court in *Harris* before a petitioner will be barred from presenting his constitutional claims for federal review simply does not appear anywhere in this record.

The facts of this case are not unlike those involving one of the petitioners, Benjamin Malone, in *In re Lee*, 95 Wash.2d 357, 623 P.2d 687 (1980), *rev'd on other grounds sub nom., Hews v. Evans*, 99 Wash.2d 80, 660 P.2d 263 (1983). Malone, following his conviction of being a habitual criminal, appealed directly to the Washington Supreme Court. The court, in turn, transferred the appeal to the Washington Court of Appeals. Malone's appeal was based on several grounds, including the admission of a prior conviction based upon a guilty plea which Malone claimed was invalid. The court of appeals affirmed the habitual criminal conviction. Malone then petitioned the supreme court for discretionary review but did not include the prior conviction issue in his petition. The petition was denied.

Upon hearing Malone's subsequent collateral attack, the supreme court exercised its discretion in his favor and referred his personal restraint petition to the superior court to be heard on the merits, stating:

> We could, perhaps, hold that since he did not persist in his protest to the admissibility of the plea-based conviction in his petition for discretionary review to this court that he had abandoned the issue. We do not choose to do so. Malone did everything that any petitioner in *Holsworth* [5] did except prevail upon this court to examine his claim of error. He raised the issue in a timely manner, and most lucidly, in the trial court and again in the Court of Appeals. Neither court recognized the validity of his contentions. While it may be said that it is not the function of a personal restraint petition to correct trial and appellate court mistakes, we think the error here, in light of *Holsworth*, to be too palpable to be disregarded.

*In re Lee*, 623 P.2d at 692.

Following this logic, Russell's failure initially to petition the supreme court for a hearing on the merits did not necessarily foreclose that court from considering in a later hearing the issues not raised in an earlier one, and it certainly did not automatically bar him from bringing them to its attention. *See Hews v. Evans*, 99 Wash.2d 80, 660 P.2d 263 (1983). Guided by *Lee*, we cannot find a procedural default here merely because issues were raised in a personal restraint petition that had not been previously taken to the state supreme court on direct appeal from the court of appeals. This finding is not contrary to *Taylor*, relied on by the appellees. As noted earlier, *Taylor* only bars issues that have been "heard and determined" by the same reviewing court. 717 P.2d at 757.

---

**4.** A magistrate so concluded in this case.

**5.** *State v. Holsworth*, 93 Wash.2d 148, 607 P.2d 845 (1980) held that in a habitual criminal proceeding, the defendant could challenge the use

of a prior conviction based on a guilty plea to prove his habitual criminal status on the basis that the prior guilty plea was constitutionally defective.

■ We conclude that Russell's personal restraint petition to the Washington Supreme Court constituted exhaustion of state remedies. Accordingly, we reverse the decision of the district court.

## IV

In her dissent to *Religious Technology Center v. Scott*, 869 F.2d 1306, 1311 (9th Cir.1989) (citation omitted), Judge Hall sets forth the principles underlying judicial estoppel:

> The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. *See* 1B *Moore's Federal Practice* ¶ .405[8], at 238–42 (2d Ed. 1988). 'The policies underlying preclusion of inconsistent positions are "general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings." ' *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir.1984), *cert. denied*, 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985) (citations omitted). Judicial estoppel is 'intended to protect against a litigant playing "fast and loose with the courts." ' *Rockwell International Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir. 1988) (citations omitted). Because it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.
> ... Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one. *See generally* Note, *Judicial Estoppel: The Refurbishing of a Judicial Shield*, 55 Geo.Wash.L.Rev. 409, 410–12 (1987); Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel*, 80 Nw.U.L.Rev. 1244 (1986).

During the first habeas proceeding in district court, the state argued federal review was not proper because Russell had "an adequate and available state court remedy through a Personal Restraint Petition," citing Washington Rules of Appellate Procedure 16.3 *et seq.* Following the dismissal of his petition, Russell—not surprisingly—filed such a personal restraint petition in December 1986 in the Washington Supreme Court, which transferred it to the court of appeals. Once in state court, the state disregarded its previous representation in federal court and argued the petition was procedurally barred because Russell had raised the same issues on direct appeal. Specifically, in a document entitled Response to Personal Restraint Petition filed on March 6, 1987 in the Washington Supreme Court, the state argued that "Russell's personal restraint petition should be dismissed because this petition [sic] raises the same legal basis for granting relief as did his appeal, the issues were decided on the merits against Russell, and now considering these same issues in his personal restraint petition would not serve the ends of justice." The document continues:

> The consideration of these issues at this time would not serve the ends of justice, especially since Russell has failed to provide any explanation for his failure to raise these issues when he had the opportunity three years ago. *To grant this type of collateral relief would undermine the finality of litigation, degrade the prominence of the trial, and cost society the right to punish an offender.* (Emphasis added).

■ This language is flatly inconsistent with the state's previous representation of June 5, 1986 in federal court that Russell's remedy in the state courts through the personal restraint petition procedure was presently "adequate and available." The word "available" as used in 28 U.S.C. § 2254(b) (requiring a petitioner first to exhaust available remedies in state court unless there exists an absence of corrective processes or "circumstances rendering such process ineffective to protect the rights of the prisoner") does not refer to an avenue that exists on a map but is closed

permanently to the kind of vehicle being driven by the defendant. It does not include a door that has been forever sealed. This was highlighted by Justice O'Connor in her concurring opinion in *Harris*, when she said, "Thus, in determining whether a remedy for a particular constitutional claim is 'available,' the federal courts are authorized, indeed required, to assess the likelihood that a state court will accord the habeas petitioner *a hearing on the merits* of his claim." 109 S.Ct. at 1046 (O'Connor, J. concurring, joined by The Chief Justice, and Scalia, J.) (emphasis added).

In the case *sub judice*, the federal district court was told not only that a remedy was "available" in state court, but that it was also "adequate." The use of these two adjectives in tandem was tantamount to advising the federal district court that Russell would be given a hearing in state court on the merits of his claims.

The dissent argues that if we apply judicial estoppel against the state in this case, we place state authorities in "quite a bind" by forcing them to choose between violating federal law requiring the state "to advise the district court whether the prisoner has, in fact, exhausted all available state remedies," *Granberry v. Greer*, 481 U.S. 129, 134, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987), and ignoring their obligations under state law to present a correct procedural default theory in state court. Dissenting op. at 1043. We respectfully fail to see this "bind." The state's true position was that Russell did *not* fall within the *Taylor* exception. Thus, in the state's view, there was *no* remedy available to the defendant. The state should have told the district court that such was the state's view—not that the defendant *did* have an *adequate and available* remedy in the state courts. This strikes us not only as appropriate, but also easy and obvious. Certainly it does not put the state in a bind. The duty of states as described in *Granberry* to advise district courts as to whether state remedies have been exhausted is best met with candor, not misdirection. A

state under these circumstances misleads a district court by mentioning only that portion of its views that favors the immediate result it seeks, and the upshot is to whipsaw the petitioner back and forth between two court systems.

We also disagree with the dissent's apparent view that estoppel does not bar a state from advancing a procedural argument in federal court that is contrary to the arguments it previously advanced in that court. The order of events in this regard strikes us as irrelevant. The dissent argues that there was a change in circumstances between the time of the first and second representations, i.e., the state courts had now spoken on the subject. Dissenting op. at 1043. Of course there was a change in circumstances! The state prevailed by telling the state court the opposite of what it told the federal court. The proposition that the state can be estopped from relying on the advantage it gained by doing so seems unremarkable.

Moreover, and with all respect to the Washington state courts, whether or not in their view the state was precluded from advancing an argument before them has scant bearing on whether the federal courts can protect the integrity of the federal system by preventing the state from taking advantage of a state decision it secured by telling the state court the opposite of what it told the federal court. Each court, state and federal, is entitled to have whatever rules of judicial estoppel it considers necessary to protect its dignity and it system of justice. That Washington may have a more limited or different view of judicial estoppel does not preclude us from determining what rule is appropriate for our purposes.

■ Having persuaded the district court to deny appellant federal review on the ground that he had an "adequate and available" state remedy, the state cannot now be permitted to oppose appellant's petition for relief on the theory he was actually procedurally barred in state court.[6] Be-

---

**6.** The fact that the earlier representation was made by the attorney general's office and the

latter by the King County prosecuting attorney

cause of the contradictory positions taken by the state, we hold in the alternative that the state is estopped from arguing in federal court that Russell's claims are procedurally barred. The state's attempt to argue that its positions were not contradictory is not persuasive.

REVERSED and REMANDED for a determination on the merits.

KOZINSKI, Circuit Judge, dissenting:

Habeas corpus is, without doubt, one of the most complex and troubling areas of federal law. One can fairly debate whether the existing system of procedural bars and exhaustion requirements creates unnecessary obstacles and delays to federal review of prisoners' constitutional claims. Compare Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, *Committee Report and Proposal* (Judicial Conference of the United States, Aug 23, 1989), with Stephen Reinhardt, *Must We Rush the Executioner?*, L.A. Times B7 (Nov 7, 1989). As judges of an inferior federal court we are not in a position to make such judgments. These rules are established by Congress and by the Supreme Court; our obligation is to apply them. As they now stand, these rules place certain hurdles in the path of the federal habeas petitioner, hurdles put in place largely out of a respect for state interests. We may ignore neither these rules nor these interests.

Today the majority needlessly encroaches on the interests of the State of Washington, by allowing a challenge to a state conviction where the state had its own adequate and independent reasons for doing what it did. To make things worse, the majority blames the confusion on the state's lawyers, placing on them an unmeetable burden. Today's decision will only make more unmanageable an already delicate and difficult area of jurisprudence.

I

A. Under the procedural default doctrine of *Wainwright v. Sykes*, 433 U.S. 72,

87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), when a petitioner is procedurally barred from bringing his federal claims in state court, he is also barred from federal habeas, absent a showing of "cause" for the default and "prejudice" to the petitioner as a result. As the Supreme Court reiterated last Term in *Harris v. Reed*, —— U.S. ——, 109 S.Ct. 1038, 1041–42, 103 L.Ed.2d 308 (1989), the procedural default rule is a subset of the "adequate and independent state ground" doctrine. Where the last state court to render judgment in a case upholds a conviction on an independent and adequate state ground—such as a procedural default—federal habeas is generally precluded. Id. 109 S. Ct. at 1043.

The rule of *Harris* is at the heart of this case. *Harris* held that, in order to find a procedural bar, the last state court to render judgment must have "clearly and expressly" stated that its ruling rests on a state procedural default. Id. Here it is uncertain whether the last court to consider the issue was the Washington Court of Appeals or the Washington Supreme Court. The majority acknowledges that the state court of appeals based its decision on a procedural default. Majority op. at 1035. Thus, if the court of appeals was the last state court to render judgment in Russell's case, federal habeas is barred.[1]

I submit that the court of appeals indeed *was* the last state court to render a judgment in this case. The majority assumes, to the contrary, that the supreme court commissioner's ruling is the relevant decision for the application of *Harris*. But the commissioner's ruling is the work of one man, not himself a justice of the Washington Supreme Court. It is far from clear that this ruling is a decision by the supreme court; the justices did not adopt the ruling, they merely refused to modify it. Excerpts of Record (ER) 4–1. Moreover, I doubt the commissioner's ruling is properly considered a judgment. It is a "Ruling Denying Motion for Discretionary Review." ER 3–1. The majority bypasses both these issues, sub silentio equating a denial of

---

is irrelevant—they were both speaking for the same party.

1. Absent a showing of cause and prejudice. *See* note 4 infra.

supreme court review by a lone commissioner with a ruling on the merits by the supreme court. It seems to me much more likely that the last state court to have ruled on Russell's claims was the court of appeals. That court's order contains a clear statement that the petition is procedurally barred.

B. Even if we assume that the commissioner's ruling was a judgment (or that it was adopted verbatim by the supreme court), that decision is also sufficient to bar federal habeas. The majority concludes that the commissioner's ruling did not "clearly and expressly" rely on a state procedural default to deny Russell relief. The majority errs once again.

The court of appeals, relying on *In re Taylor*, 105 Wash.2d 683, 717 P.2d 755 (1986), held that Russell was barred from bringing his claims via a personal restraint petition (PRP) because he had already presented those claims on direct appeal. Memorandum of Authorities in Support of Respondent's Motion for Summary Judgment, Exhibit 8. The commissioner's ruling affirmed the court of appeals' application of *Taylor*. ER 3–1 to 3–3. *Taylor* held that a PRP should be dismissed if the petitioner's claims had already been rejected on direct appeal, unless the "ends of

justice" would be served by hearing the claim. 717 P.2d at 758. This is a procedural default rule. By affirming its application to Russell's case, the commissioner clearly and expressly stated that a procedural bar was at least one basis for his ruling.[2]

As part of his *Taylor* analysis,[3] the commissioner considered whether the "ends of justice" exception should apply. He discussed and rejected two theories—one factual and one legal—that might entitle Russell to such an exception. First, the commissioner found that there was no new evidence in the case sufficient to constitute a "colorable showing of factual innocence." ER 3–3 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)). Next, he concluded that "each of [Russell's] three renewed legal issues still appears to be fully consistent with applicable caselaw." ER 3–3.

In *Taylor*, the Washington Supreme Court explained that one example of an ends of justice exception is "an intervening change in the law." 717 P.2d at 758. The majority construes the commissioner's "applicable caselaw" statement as an independent determination of Russell's claims. Majority op. at 1036. But even the most

---

**2.** And one basis is all that is needed. In *Harris*, the Supreme Court held that procedural bar need not be the sole basis for the state court judgment. The Court explained:

> [A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.

*Harris*, 109 S.Ct. at 1044 n. 10 (emphasis original; citation omitted).

**3.** The majority is under the misapprehension that the commissioner did not apply *Taylor* at all. "*Taylor* only bars issues which have been 'heard and determined' by the reviewing court." majority op. at 1035 n. 3. Since the Washington Supreme Court never heard Russell's claims on direct appeal, that court could not have rejected

Russell's PRP on *Taylor* grounds, the majority reasons. The commissioner's reference to *Taylor*, the majority concludes, was merely an affirmation that *the court of appeals* —a court that had heard and determined Russell's previous appeal—had properly applied a procedural bar. Majority op. at 1036.

The majority's interpretation of *Taylor* is refuted by the facts of that case. In *Taylor*, a Washington Supreme Court case, the supreme court had *not* heard and determined Taylor's case on direct review; only the court of appeals had affirmed his conviction. 717 P.2d at 757. Yet the supreme court had no difficulty framing the issue before it as "whether Taylor's PRP raises issues which *this court* may consider on collateral review." Id. (emphasis added). It was in this context that the Washington Supreme Court held that an issue previously heard and determined on direct review in any Washington court will normally bar collateral review, absent an "ends of justice" exception. Id. at 757–58. I don't understand how the majority can conclude that the *Taylor* procedural bar applies only to courts that had previously heard and determined a direct appeal.

cursory reading of *Taylor* reveals that this is not so. The "applicable caselaw" inquiry is an integral part of the *Taylor* analysis; the commissioner's discussion tracks that analysis precisely. The commissioner was not performing an independent substantive review of Russell's claims; he was doing only what *Taylor* said was required in determining that Russell's petition was procedurally barred. His decision was "clearly and expressly" based on an affirmation of the court of appeals' procedural ruling.

The majority's reliance on *In re Lee*, 95 Wash.2d 357, 623 P.2d 687 (1980), overruled in part, *Hews v. Evans*, 99 Wash.2d 80, 660 P.2d 263 (1983), is puzzling. I can only assume that the majority cites *Lee* to demonstrate that the Washington Supreme Court has not consistently applied the rule of *Taylor*. It is true that a state procedural default is not adequate to bar federal habeas unless the procedural rule has been "consistently or regularly applied." *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988). The Court has explained that "[s]tate courts may not avoid deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Hathorn v. Lovorn*, 457 U.S. 255, 263, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982). This federal habeas rule is not relevant here because *Lee* and this case represent consistent applications of the *Taylor* rule.

As noted, the Washington Supreme Court in *Taylor* held that a PRP should be dismissed if the petitioner's claims had already been rejected on direct appeal and the "ends of justice" would not be served by hearing the claim. 717 P.2d at 758. In defining that phrase, the court explained that "an intervening change in the law"

might justify collateral review. Id. Despite the difference in outcome, *Lee* and this case both follow this rule.

*Malone* and *Russell* were not treated similarly because they did not present "similar claims." *Hathorn*, 457 U.S. at 263, 102 S.Ct. at 2426. *Lee* allowed collateral review of Malone's conviction because there had been a change in relevant state law since the time of his direct appeal, namely *State v. Holsworth*, 93 Wash.2d 148, 607 P.2d 845 (1980). *Lee*, 623 P.2d at 691–92. In this case, both the court of appeals and the commissioner held that Russell's PRP was barred because he had already raised the issues on direct appeal *and* there had been no intervening change in the relevant law. Memorandum of Authorities in Support of Respondent's Motion for Summary Judgment, Exhibit 8; ER 3–3. Thus, the Washington Supreme Court has applied its procedural default rule consistently, allowing collateral review of previously adjudicated claims only if there has been a change in relevant law or another "ends of justice" exception applies. There was an independent and adequate state procedural ground to bar federal habeas.[4]

II

Serious as is the majority's error as to procedural bar, it pales by comparison to its alternative ruling regarding judicial estoppel. This ruling reflects so little regard for the legitimate interests of the state courts and state prosecutors, it is certain to cause much mischief.

A. What is most baffling about the majority's analysis of judicial estoppel is that it is flatly inconsistent with its analysis of

---

**4.** Once procedural bar is established, a petitioner's only recourse is to show cause and prejudice. *Wainwright*, 433 U.S. at 87, 97 S.Ct. at 2506. Russell argues that the cause for his failure to raise all issues on direct appeal to the Washington Supreme Court was error by his attorney. Petitioner's Opposition to Motion for Summary Judgment at 3 (Dec 29, 1987). The Supreme Court has held that for attorney error resulting in procedural default to amount to cause, the error must rise to the level of constitutionally ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct.

2639, 2645, 91 L.Ed.2d 397 (1986). Such a claim, as it presents a constitutional question, must itself be raised and exhausted in state court before it may be used to establish cause for a procedural default. Id. at 489, 106 S.Ct. at 2646. There has been no showing that Russell ever presented this claim to the state courts. Thus, at best, Russell must go back to state court to present his ineffective assistance of counsel claim before he could attempt to get around the procedural bar on his other claims.

As there is no showing of cause, the presence of actual prejudice is irrelevant.

procedural bar. In section III of its opinion, the majority finds it at least arguable that the commissioner in fact addressed Russell's constitutional claims on the merits. Majority op. at 1036. The majority also concludes that a priori there was a good possibility that the Washington Supreme Court would hear Russell's PRP:

> Russell's failure initially to petition the supreme court for a hearing on the merits did not necessarily foreclose that court from considering in a later hearing the issues not raised in an earlier one, and it certainly did not automatically bar him from bringing them to its attention.

Majority op. at 1036. How then, in section IV of its opinion, can the majority conclude that the state of Washington misled the district court at the first habeas hearing by arguing that Russell had an "available" state remedy?

On the first habeas petition, the state argued that Russell had failed to exhaust because he had a remedy available in state court. This argument was not merely successful, it was right. More than that, under Supreme Court caselaw, the state was *required* to make this argument: "When the State answers a habeas corpus petition, it has a duty to advise the district court whether the prisoner has, in fact, exhausted all available state remedies." *Granberry v. Greer*, 481 U.S. 129, 134, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987).

As the majority points out, at the time Russell brought his first habeas petition in federal court there was a good chance that he could get the Washington Supreme Court to hear his claims via a PRP. Majority op at 1036. This fact alone required the district court to dismiss Russell's habeas petition. Moreover, under *Granberry*, the State of Washington had the obligation to make the argument for nonexhaustion based on the availability of that procedure. The state, therefore, did precisely what it was supposed to do.

The majority believes that the prosecutor overreached in characterizing the state procedure as "available," because that term suggested to the district court that Russell's claims would in fact be heard on the merits via a PRP. Majority op. at 1038. But under our caselaw, when a petitioner has not previously presented his claims to the state's highest court, a procedure is "available" for purposes of the exhaustion requirement even if it is discretionary and contingent. *Batchelor v. Cupp*, 693 F.2d 859, 863 (9th Cir.1982). That was the case here. Under *Taylor*, Russell still had the live possibility that the state supreme court would consider his claim. The prospect of this state remedy—remote though it may have been—was enough to bar a federal habeas petition. Id. The procedure therefore *was* "available" as that word is normally understood in the exhaustion context. The majority does the state an injustice by interpreting its use of "available" far more broadly than the term is used in our own cases. The unfairness is particularly great because, under *Granberry*, the state authorities were required to point out to the district court that the availability of this remedy precluded federal habeas.

In any event, I don't understand the majority's fixation with the particular adjective employed by the state in describing the state PRP procedure. Given the way the PRP process *actually operates* in the State of Washington, it is quite clear that the district court was required to dismiss Russell's first petition. It would have made no difference—none—if the state had said "contingently available" or "possibly available" or "maybe available" or "available for immediate occupancy." The outcome would have been just the same. In fact, the language the state used—"adequate and available"—is a fair and accurate description of the situation in light of our caselaw as to what amounts to available.

Back in state court after the first habeas dismissal, the state did not argue that there was absolutely no avenue of review open to Russell, an argument that might have been inconsistent with the state's representation in federal court; it argued only that the state courts should not exercise their discretion in giving Russell the benefit of the narrow *Taylor* exception. The majority apparently views *this* argument as inconsistent with the state's prior argu-

ment in federal district court. But where is the inconsistency? There is a significant difference between arguing that there are state procedures available to petitioner, as the state was required to do, and actually helping him succeed once he avails himself of those procedures. As I see it, the state was well within the bounds of accepted practice in arguing before the state courts that Russell did not fall within the *Taylor* exception.

The majority places the state authorities in quite a bind: state lawyers must choose between violating federal law or ignoring their obligations under state law. Under the majority's analysis, if the state makes its required showing of nonexhaustion in federal court, it is precluded from presenting a correct procedural default theory in state court. However the state's lawyers resolve this dilemma, they would not be doing their jobs. After taking the state authorities to task for what they supposedly did wrong, it would be helpful if the majority would explain how the state should have done it differently. If we are going to make lawyers negotiate a path between Scylla and Charybdis, we might be well advised to give them a map.

B. In any event, I don't understand how the federal courts can complain about any inconsistency in the state's litigating position. Estoppel operates forward, not backward. If there was an inconsistency between the state's initial representation in federal court and its later assertions in state court, the first argument could estop the second, but the second could not estop the first. Thus, estoppel could apply only in the state court proceedings. Russell in fact argued estoppel, but the state courts rejected the claim and went on to find a procedural default. It was exclusively within the province of the state courts, it seems to me, to decide whether they would refuse to reach the merits of the prosecutor's arguments because the prosecutor had changed positions upon returning from federal court.

As the majority explains, judicial estoppel is an equitable doctrine designed to protect the dignity of judicial proceedings. See Majority op. at 1037, quoting *Religious Technology Center v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989) (Hall dissenting); *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir. 1984). If the Washington state courts did not feel their institutional interests were impugned by considering the state's procedural default argument, what business is it of ours? By holding that the state was precluded from making the procedural default claim, the majority is telling the state courts that they were wrong to reach the claim and hold that there was a default. Quite simply, the majority is second-guessing the state courts on a question of state law.

The majority cannot avoid that conclusion by arguing that the state took inconsistent positions in the two federal court proceedings. In the first place, that is not in fact what the opinion relies on; the majority reviles the state for what it said in *state* court subsequent to its representation in federal court. Majority op. at 1037.

Moreover, there is no inconsistency between the positions the state took in its two appearances in federal court because there had been a material change in circumstances in the interim. The first time, the state claimed that Russell had failed to exhaust state remedies because state processes were still open to him. That assertion was entirely true. The second time, the state argued that, in light of the intervening ruling of the state courts, Russell was procedurally barred. That was equally true. The two arguments are indeed different, but they were made at different times, one before and one after the state courts had spoken on the question of procedural default. How the majority can invoke judicial estoppel under these circumstances is beyond me.

C. Finally, it is irrelevant what the majority thinks about judicial estoppel; that question is res judicata between the parties. Russell specifically raised the question before the state courts. The court of appeals rejected the claim, albeit without discussion. Memorandum of Authorities in Support of Respondent's Motion for Summary Judgment, Exhibit 8. Of course, the

court's failure to discuss the claim is not material; what counts is that it could not have reached the decision it did without rejecting the judicial estoppel claim. See *Block v. Commissioners*, 99 U.S. 686, 693, 25 L.Ed. 491 (1878); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 18 *Federal Practice and Procedure* § 4421 at 193 (West, 1981).

The state supreme court was more explicit. Assuming that the commissioner's ruling became the opinion of the court, the court directly addressed and rejected the judicial estoppel claim:

> On the estoppel issue, I am not persuaded that the State acted improperly in taking the positions it did in the two proceedings. Since Mr. Russell's petition for review addressed only his murder conviction, and since this court did not expand the scope of review upon granting the petition, the issues he raised on appeal regarding the other two convictions were not before this court. RAP 13.7(b). The State correctly represented this exhaustion problem in the federal habeas action. Also, since Washington courts will, upon a sufficiently compelling showing, consider renewed claims in a personal restraint petition, *In re Taylor, supra,* the State in its federal court pleadings accurately described the state remedy as "available." I do not believe this somehow bound the State not to contest whether Mr. Russell could later make the requisite showing, however. Moreover, it seems questionable whether the *Taylor* rules need even be affirmatively raised by the State in order for the court to apply them.

ER 3–2 to 3–3. Having twice raised the claim of judicial estoppel in judicial proceedings and having had it rejected, Russell may not again raise it before us; it is res judicata. See *St. John v. Wisconsin Employment Relations Bd.*, 340 U.S. 411, 71 S.Ct. 375, 95 L.Ed. 386 (1951); *Abramson v. University of Hawaii*, 594 F.2d 202, 207 (9th Cir. 1979).

### Conclusion

The federal habeas doctrines of exhaustion and procedural default are comity based; they evince a respect for state court judgments, and an understanding that, in a federal system, the federal courts should not interfere when the states are taking care of their own business. Today, the majority erodes these doctrines, ignoring the interests of the State of Washington. The majority achieves this result by misconstruing the actions of the Washington courts, and overruling a state court judgment that is res judicata between the parties. Adding insult to injury, the majority takes the Washington state lawyers to task for doing exactly what they were supposed to do. I respectfully dissent.