* The Honorable Fern M. Smith, United States District Judge for the Northern District of California, sitting by designation.

1. In light of Judge Reinhardt's dissent, we would only add that we do not find the reasons

Frederick George ROEHLER,
II, Petitioner–Appellant,

v.

Robert BORG, Attorney General of the
State of California, Respondents–
Appellees.

No. 90–56232.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1991.

Decided March 4, 1992.

Dissenting Opinion Amended
April 10, 1992.

Dennis P. Riordan, Riordan & Rosenthal, San Francisco, Cal., and Wendy Cole Lascher and Edward L. Lascher, Lascher & Lascher, Ventura, Cal., for petitioner-appellant.

David F. Glassman, Asst. Atty. Gen. and Donald F. Roeschke, Supervising Deputy Atty. Gen., Los Angeles, Cal., for respondents-appellees.

Before REINHARDT and
FERNANDEZ, Circuit Judges, and
SMITH, District Judge.*

ORDER AND DISSENT FROM DENIAL
OF LEAVE TO FILE A PETITION
FOR REHEARING

The motion for leave to file petition for rehearing (and to file the associated petition for rehearing en banc) is DENIED.[1]

REINHARDT, Circuit Judge, dissenting from the denial of leave to file a petition for rehearing:

This is a close case. The evidence against Roehler was entirely circumstantial: a review of its sufficiency requires an intensive fact-bound examination of the voluminous records of Roehler's trial. That is not an easy task. The case is the type in which an error can easily be made. Our opinion does not say that we are persuaded

for still another extension of time to be persuasive. Moreover, this panel has already given extended, detailed, and careful consideration to all of Roehler's arguments.

that Roehler murdered his wife and stepson; instead, we employed—as we are required to do—a highly deferential test and concluded only that we could not say that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979). On that basis we upheld Roehler's sentence of life imprisonment without the possibility of parole.

Our decision is neither final nor infallible. *Cf. Brown v. Allen,* 344 U.S. 443, 540, 73 S.Ct. 397, 427, 97 L.Ed. 469 (1953) (Jackson, J., concurring in the result) ("We are not final because we are infallible, but we are infallible only because we are final."). A major safeguard against the possibility—indeed, the eventual inevitability—of a mistake in our decisionmaking is the potential for a rehearing when counsel alleges that we have erred.[1]

Roehler's petition for rehearing is not frivolous. Among other things, he argues that our decision erroneously defers to a jury verdict that was substantially influenced by evidence that on direct appeal was ruled to have been improperly admitted and misleading. The improperly admitted evidence was the testimony of an "expert" named Mauzey who stated that Douglas' head injuries were in a "pattern" and that Mauzey had performed an experiment with dummies that indicated that the "pattern" could have arisen *only* from deliberate infliction and could not have resulted from hitting the dory, the rescue craft, or Bird Rock. The prosecutor himself told the jury that Mauzey's testimony was an important part of his case, and informed the judge that he believed that "a successful prosecution of Mr. Roehler will *require* the production of competent evidence to the effect that none of the surfaces within the sailboat … are so shaped that they might reasonably be expected to produce the pattern of bruises observed on the back of Douglas' head at his second autopsy." However, Mauzey was not an expert in head impacts, there was no scientific literature on the subject, and Mauzey's "experiment" was replete with errors; accordingly, the state appellate court held that Mauzey's testing and conclusions were in no way the result of "the type of reliable scientific procedures" required for expert testimony and were therefore inadmissible.

Roehler contends that without the "pattern" evidence, no rational jury could have found him guilty beyond a reasonable doubt, and that our deference to a jury verdict that was significantly influenced by inadmissible and misleading evidence is improper. That argument is worthy of consideration—by no means can it be summarily dismissed.[2] My colleagues nevertheless refuse to consider Roehler's petition for rehearing because it was submitted "late". I conclude that we should not uphold Roehler's sentence without examining his argument that doing so will result in the incarceration of an innocent person for the rest of his life.

The opinion in this case was filed on September 24, 1991. Under **Fed.R.App.P.**

---

**1.** It is almost certain that we are denying Roehler his final opportunity to have a tribunal hear his claim. It is unlikely that the "infallible" Supreme Court will choose to adjudicate Roehler's case, *see* The Statistics, 104 *Harv.L.Rev.* 419, 423 (1991) (indicating that the Supreme Court last Term granted certiorari to less than five percent of the cases appealed to it, and that the odds that it would choose to hear an appeal of an adverse *habeas corpus* decision are even lower)—indeed, it has already refused to do so once. *See Roehler v. California,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985) (denying certiorari). Moreover, the increasingly-strict limitations on successive *habeas* petitions, *see McCleskey v. Zant,* — U.S. —, 111 S.Ct. 1454, 1467–72, 113 L.Ed.2d 517 (1991), further limit the ability of individuals like Roehler to seek any additional review of their possibly unconstitutional incarceration.

**2.** I do not believe that the footnote in our opinion, *see Roehler v. Borg,* 945 F.2d 303, at 304 n. 2. (9th Cir.1991), adequately deals with Roehler's point. If it is more likely than not that the defendant was convicted *because of* the use of evidence subsequently held inadmissible by the state courts, reversal may be required. That the evidence does not appear to us to be "overly impressive," *id.,* is less significant than the fact that the jury may well have thought that it was, based on the prosecutor's comments. Furthermore, having taken one position at the state court trial, the state may not assert a contrary one here. *See Russell v. Rolfs,* 893 F.2d 1033, 1037–39 (9th Cir.1990).

40(a), Roehler had 14 days after entry of judgment against him in which to file a petition for rehearing. Roehler's counsel, Dennis Riordan, requested an extension of time: our order of October 23, 1991 permitted him to file a petition "on or before November 7, 1991." Riordan declared under penalty of perjury that he moved for a second extension of time on November 6, 1991. On December 26, 1991, Riordan stated—again under penalty of perjury—that, to his knowledge, we had not ruled on his November 6th motion, and reiterated his request for leave to file a petition for rehearing. Filed along with Riordan's request was a completed Petition for Rehearing, as well as Riordan's sworn explanation of why he was unable to complete the petition prior to that date.

Although Roehler's petition for rehearing was filed after the fourteen-day period specified in **Fed.R.App.P.** 40(a), **Fed.R.App.P.** 26(b) states that "for good cause shown [the court] may upon motion enlarge the time" for filing the petition. We found "good cause" present once, when we extended the time within which Roehler could file his petition until on or before November 7. Riordan stated that he requested another extension on November 6 and believed—until he filed the petition on December 26—that we had not yet acted on that request. Although we have no record of Riordan's November 6th request, I am not willing to conclude that a member of the bar of Riordan's stature has wilfully perjured himself before this court. Moreover, it is well-known that since the Loma Prieta earthquake on October 17, 1989, in San Francisco the Clerk's office has had problems with a number of filings, orders, and other records. It is far more likely that any problem over the second extension is attributable to us than it is that Riordan has knowingly misrepresented the facts.[3] In addition, according to Riordan, Mr. Edward Lascher—who was his co-counsel and also the husband of another co-counsel, Wendy Lascher—died soon after we announced our decision in this case. Riordan swears under penalty of perjury that the unavailability of Mr. and Mrs. Lascher, his lack of access to the records in this case (which were located in the Lascher's office), and a large workload resulted in his inability to file the petition prior to December 26th.

When the Supreme Court allowed the state of Virginia to sentence Roger Coleman to death as a result of his counsel's procedural error, it did so at least ostensibly because it considered itself institutionally bound to reach that result, *see Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 2552, 115 L.Ed.2d 640 (1991) ("This is a case about federalism."); although several members of the Court thought otherwise. *See id.* at 2569 ("Federalism; comity; state sovereignty; preservation of state resources; certainty: the majority methodically inventories these multifarious state interests.... One searches in the majority opinion in vain, however, for any mention of petitioner Coleman's right to a criminal proceeding free from constitutional defect or his interest in finding a forum for his constitutional challenge to his conviction and sentence of death.") (Blackmun, J., dissenting) (citation omitted). Whatever the duty of the Supreme Court was or was not in *Coleman,* we are not bound to refuse to give Roehler a fair and full hearing. **Fed.R.App.P.** 26(b) explicitly permits us to

---

**3.** Since the original filing of this dissent, Riordan has supplemented the record with a copy of the motion he sent on November 6th, affidavits from individuals stating that the motion was mailed on that day, a copy of a Federal Express label that is dated November 6th and marked "Roehler", and a copy of a bill that indicates that the package was received in the Clerk's office on November 7th and that receipt was acknowledged by a named employee of the Clerk's office who signed for the package. There can now be no doubt whatsoever—and here I believe that I speak for my colleagues as well as myself—that Riordan did indeed move for a second extension of time on November 6th and that the Clerk failed to record that motion and deliver it to the panel. Fortunately, we are not as harsh with ourselves, when we err, as we all too often are with lawyers and their clients.

consider a late petition "for good cause shown". To me, Riordan's statements are sufficient to demonstrate that we have "good cause" to consider Roehler's late petition for rehearing. I am unwilling to risk the unjust imprisonment of an innocent man for the rest of his life based upon our unwillingness to grant his counsel an extension of time in which to file a petition. Accordingly, I dissent from the denial of leave to file a petition for rehearing.