The COMMITTEE OF THE RUSSIAN FEDERATION ON PRECIOUS METALS AND GEMS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. C–96–2771–JLQ.

United States District Court, N.D. California.

Feb. 28, 1997.

---

**1182**

Mark E. Beck, Joan M. Steinmann, Beck, De Corso, Daly, Barrera & Oh, Los Angeles, CA, for Plaintiff.

Jay R. Weill, U.S. Attys. Office, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

QUACKENBUSH, Senior District Judge.

**BEFORE THE COURT** is Plaintiff's Motion for Summary Adjudication on the issue of judicial estoppel, heard on February 3, 1997, in San Francisco, California. Mark E. Beck and Joan M. Steinmann appeared on behalf of the Plaintiff. Jay R. Weill appeared on behalf of the Defendant. Having reviewed the record, heard from counsel, and being fully advised in this matter, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Adjudication is **DENIED** for the following reasons.

### FACTUAL BACKGROUND

This is one of several cases filed in this court, as well as cases filed in Tax Court and Bankruptcy Court, concerning the alleged theft of millions of dollars worth of Russian valuables by Golden ADA, Inc. and a jeopardy assessment and resulting liens and seizures of the IRS against Golden ADA, Inc.

It is The Committee of the Russian Federation (The Committee's) position in this action that the IRS's jeopardy assessment and resulting liens and seizures were wrongful because the assets of Golden ADA rightfully belong to the Committee. The Committee first brought this motion as a Motion to Limit Discovery, subsequently converted to this Motion for Summary Adjudication. The Committee claims that the IRS, in obtaining its jeopardy tax assessment against Golden ADA, relied on the position that Golden ADA had wrongfully converted the Committee's diamonds and other valuables, and that, therefore, judicial estoppel should be applied to preclude the IRS from now taking the position in this case that the valuables were not stolen from the Committee.

It is clear that, in obtaining its jeopardy assessment, the IRS did rely in part on the allegations of the Committee that Golden ADA had wrongfully converted its diamonds and other valuables asserted in Case No. C–95–3449–JLQ (the RICO case). However, Judge Henderson did not rule on the merits of the Committee's allegations in approving the IRS assessment, but rather ruled that it was reasonable to rely on the Committee's unproven allegations to support the jeopardy assessment because those factual issues would subsequently be litigated in either the Tax Court or the District Court.

The affidavit of Revenue Agent Victoria Rex in support of the jeopardy assessment reflects that she did rely, at least in part, on documents and pleadings filed by the Committee in the RICO case, as well as an Affidavit in Support of Application for a Search Warrant to search two boxes being shipped from Golden ADA, San Francisco to Golden ADA, Belgium, both of which set forth the Committee's alleged fraudulent conversion of valuables claims against Golden ADA.

However, the Rex affidavit also refers to a letter dated July 19, 1994 written by Golden ADA Controller, Jay Howell, to Andrei Kozlenok stating that Golden faced a number of potential tax problems, including but not limited to: (1) debts owed the Committee for gold and diamonds that had been sold; (2) Company expenditures personal in nature that should be included in individual income tax returns of the owners, including houses, boats, and cars; (3) $26,968,716.00 deducted in 1993 and $109,135,253.00 deducted in 1994 as "Purchases"; (4) frequent turnover in key officer positions in Golden ADA, with the

‌

latest CEO, Jack Immendorf, being paid in excess of $2,000,000.00 in 8 months time; (5) cash flow problems and the sale of corporate assets indicating that bankruptcy filing could be imminent; (6) cashiers checks payable to Golden employees for their weekly payroll; and (7) documentation for numerous wire transfers involving transfers of large amounts of cash overseas without explanation. Therefore, the jeopardy assessment was not based only on the allegations of the Committee of fraud and wrongful conversion of valuables by Golden ADA.

To the contrary, there were additional reasons for approving the jeopardy assessment, other than the claims of the Committee. There was clear indication that there were multiple problems with Golden ADA's tax returns and financial dealings, and it appeared clear that Rajiv Gosain was on the verge of putting Golden ADA into bankruptcy.

It is the IRS's position in this case that no discovery has yet been allowed, and that there is now information, not available at the time of the jeopardy assessment, leading the IRS to believe that the diamonds and other valuables may not have been wrongfully converted from the Committee, but rather were some kind of capital contribution by the Committee to Golden ADA.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment or summary adjudication is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.1975), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399. Fed.R.Civ.P. 56(c) provides that summary judgment is only proper where the pleadings, discovery, and affidavits show that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court must view the evidence presented "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, credibility determinations, weighing of the evidence, and drawing legitimate inferences from the facts belongs to a jury. The judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Id.* at 249, 106 S.Ct. at 2510.

At issue here is whether the court should rule as a matter of law that the doctrine of judicial estoppel precludes the IRS from taking any position in this litigation other than the position that Golden ADA wrongfully converted diamonds and other valuables from the Committee.

## JUDICIAL ESTOPPEL

■ The doctrine of judicial estoppel is invoked "to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." *United States v. Nix*, 21 F.3d 347 (9th Cir. 1994). The Ninth Circuit set forth the principles underlying judicial estoppel in *Russell v. Rolfs*, 893 F.2d 1033 (9th Cir.1990), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991).

> The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process ... The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings ... Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts ... Because

it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion. *Id.* at 1036. "The integrity of the judicial process is threatened when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions, factual or legal." *Helfand v. Gerson,* 105 F.3d 530 (9th Cir.1997). However, there is no threat to the integrity of the judicial process when a litigant takes alternative positions in a case in support of its position. *See Bradley v. Harcourt, Brace and Co.,* 104 F.3d 267 (9th Cir.1996).

■ The IRS contends that judicial estoppel does not apply to the Government. The IRS is correct that courts are normally reluctant to apply equitable estoppel against the Government. *See United States v. Omdahl,* 104 F.3d 1143 (9th Cir.1997); *United States v. Shampang,* 987 F.2d 1439, 1444 (9th Cir. 1993). The IRS is also correct that non mutual offensive collateral estoppel does not apply against the Federal Government. *United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984).

However, as the Committee notes, the Ninth Circuit has stated that unlike collateral estoppel and equitable estoppel, judicial estoppel focuses exclusively on preventing the use of inconsistent assertions that would result in an "affront to judicial dignity" and "a means of obtaining unfair advantage." *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.,* 106 F.3d 284 (9th Cir.1997); *Rockwell International v. Hanford Atomic Metal Trades,* 851 F.2d 1208, 1210 (9th Cir.1988). Additionally, the Ninth Circuit has applied judicial estoppel against Governmental bodies. *Northern Alaska Environmental Center v. Lujan,* 961 F.2d 886, 891 (9th Cir.1992); *Russell v. Rolfs, supra,* 893 F.2d 1033.

The Committee relies on *Reynolds v. Commissioner,* 861 F.2d 469 (6th Cir.1988) and *Continental Illinois Corp. v. Commissioner,* 998 F.2d 513 (7th Cir.1993), *cert. denied,* 510 U.S. 1041, 114 S.Ct. 685, 126 L.Ed.2d 652 (1994), where the Sixth and Seventh Circuits have applied judicial estoppel against the IRS.

In *Reynolds,* a husband and wife had sold some property with a very low tax basis, therefore resulting in a large taxable gain. Mrs. Reynolds received a portion of the gain. The IRS assessed a tax deficiency against her. She subsequently filed for bankruptcy and divorce. The IRS then shifted gears and assessed Mr. Reynolds for the capital gain that had been received by his wife. A few days later, the IRS entered into a stipulation of settlement with Mrs. Reynolds in the bankruptcy proceeding for payment of the unpaid taxes. Subsequently the tax court upheld the assessment of tax on Mr. Reynolds. He appealed, and the 6th Circuit held that the IRS should be judicially estopped from claiming that Mr. Reynolds owed the tax, since the IRS had reached a settlement with Mrs. Reynolds for payment of the tax, approved by the Bankruptcy Court.

> What we have in the case before us, ... appears to be a knowing assault upon the integrity of the judicial system. **There has been no claim here that the IRS was not fully conversant with all of the pertinent facts at the time of the stipulation with Mrs. Reynolds,** and we can perceive no reason why the IRS should be allowed knowingly to take a position in one judicial proceedings, **secure final judicial acceptance of that position,** and then knowingly attempt to persuade a different court to accept fundamentally inconsistent positions.

*Id.* at 473. (Emphasis added).

In *Continental Illinois,* the IRS had prevailed in tax court on a theory that the taxpayer was not entitled to a foreign tax credit. On appeal, the IRS attempted to argue that foreign taxes were not paid so that amounts withheld by foreign borrowers for payment of local taxes would be included in the taxpayer's income. The 7th Circuit held that the IRS was judicially estopped from repudiating the legal position on which it had previously prevailed.

> It is true that the doctrine is usually applied to successive suits ... **A party can argue inconsistent positions in the alternative, but once it has sold one to the court it cannot turn around and repudiate it in order to have a second victory,** which is what the IRS is seeking here. Having persuaded us to reject Continen-

tal's effort to show that the taxes were paid, the IRS may not argue against a restatement of income on the ground that they really were not paid. Either they were or they weren't. If they were, Continental is entitled to a foreign tax credit, and if they weren't it is entitled to restate its income to take the foreign taxes out. *Id.* at 517. (Emphasis added).

The court is satisfied that the Committee's motion should not be denied just because the other party is the IRS. However, Both *Reynolds* and *Continental Illinois* are distinguishable from this case in two important aspects. The Government has not secured final judicial acceptance of their position that the jeopardy assessment was appropriate based on the theory that the diamonds and valuables were wrongfully stolen from the Committee. That issue is currently being litigated in an action by Golden ADA against the IRS in Tax Court, *Golden ADA v. IRS*, No. 5939–96. Additionally, the IRS here does claim that it was not fully conversant with all the facts at the time it obtained its jeopardy assessment, and that they have not yet been able to obtain all the necessary facts through formal discovery as to the truth of the Committee's allegations.

A finding that the IRS's previous position has not been finally adopted by the Tax Court does not necessarily mandate a finding that judicial estoppel should not apply here. A majority of courts only apply judicial estoppel when the inconsistent assertion previously made was adopted by a court. Other courts have held that judicial estoppel can apply even when a party was unsuccessful in asserting its earlier position, if the court determines that the alleged offending party engaged in fast and lost behavior which undermined the integrity of the court. The Ninth circuit has recognized both theories, but has not yet determined which of the two theories it will follow. *See Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.1996).

However, this court neither finds that the IRS's position that the diamonds and valuables were fraudulently converted from the Committee has been adopted by the Tax Court at this time, nor that the IRS is "playing fast and loose" with the judicial system.

The Committee does not dispute that the judicial estoppel doctrine does not apply where a former position was based on fraud or mistake. *In re Corey*, 892 F.2d 829 (9th Cir.1989), *cert. denied*, 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990) (citing *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C.Cir.1980) for the proposition that "judicial estoppel has never been applied where a party's past assertion was based on fraud, inadvertence or mistake." The IRS has been precluded from conducting discovery to establish that its prior position may have been based on fraud, inadvertence or mistake. The court is satisfied that the Government should not be precluded from conducting discovery to determine whether their reliance on the Committee's allegations in the RICO case to support its jeopardy assessment and resulting liens was due to fraud or mistake.

Finally, a recent Motion for Continuance filed by the IRS in Tax Court in the case of *Golden ADA v. IRS*, No. 5939–96 on January 21, 1997 clearly indicates that the IRS is taking two alternative positions in the Tax Court to support its jeopardy assessment of Golden ADA assets. The motion states:

> The deficiencies in tax are based on respondent's (IRS) determination that petitioner (Golden) realized taxable income when petitioner (Golden) fraudulently converted the valuables and diamonds from the Committee **and, alternatively,** that petitioner (Golden) was not entitled to an allowance for cost of goods sold when it sold the diamonds and valuables.

Therefore, although the IRS took, and continues to take, the position that its tax assessment is appropriate due to the Committee's allegations that Golden ADA fraudulently converted diamonds and valuables from the Committee, it is clear that the IRS is also taking the alternative position that the tax assessment is appropriate because Golden ADA was not entitled to a deduction for cost of goods sold when it sold the diamonds and valuables. Therefore, the court does not find that the IRS taking an alternative position in the Tax Court and/or here that the committee sent the assets to Golden ADA as a capital contribution constitutes a knowing assault upon the integrity of the

**1186**

judicial system by playing "fast and loose" with the courts. *See Bradley, supra,* 104 F.3d 267.

> ... [W]e are troubled by the inconsistent positions Bradley takes with regard to the adequacy of her work performance ... [W]e will not invoke the doctrine of judicial estoppel because Bradley takes her inconsistent positions in the same litigation ...

*Id.*

Because the IRS has not finally prevailed in the Tax Court on its theory that the jeopardy assessment is appropriate because the diamonds and valuable were stolen from the Committee, and because the IRS has not yet been afforded the discovery necessary to support any claim that that position may have been based on fraud or mistake, and because the IRS is taking alternative positions in the Tax Court to support its jeopardy assessment, the court cannot find that the IRS's position in this case is an "affront to judicial dignity" and "a means of obtaining unfair advantage." *Columbia Pictures Television, supra,* 106 F.3d 284, 1997 WL 45322.

Therefore, the court finds that Plaintiff has not made a sufficient showing of the absence of disputed material facts to warrant summary judgment in its favor. Accordingly, Plaintiff's Motion for Summary Adjudication is **DENIED.**

The record reflects that Defendant's Motion to Dismiss and Plaintiff's Motion to File Second Amended Complaint are scheduled to be heard on March 11, 1997 in San Francisco, California. If the Motion to Dismiss is denied, the court will set discovery cutoff, other pretrial cutoff dates, and set this matter for trial.

**IT IS SO ORDERED.** The clerk is directed to enter this Order and forward copies to counsel.