**ROCKWELL INTERNATIONAL CORPO-RATION, Rockwell Hanford Operations, a Delaware Corporation, Plaintiff–Appellee.**

v.

**HANFORD ATOMIC METAL TRADES COUNCIL, etc., Defendant–Appellant.**

No. 87–3746.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1988.[*]

Decided July 12, 1988.

David E. Williams, Critchlow & Williams, Richland, Wash., for defendant-appellant.

Robert S. Gruhn, Richland, Wash., and Burton J. Fishman, Gibson, Dunn & Crutcher, Washington, D.C., for plaintiff-appellee.

---

[*] This panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Before WRIGHT, FERGUSON and BRUNETTI, Circuit Judges.

FERGUSON, Circuit Judge:

Hanford Atomic Metal Trades Council ("HAMTC") appeals the district court's grant of summary judgment to Rockwell International Corporation ("Rockwell"). HAMTC argues that the district court erroneously raised the doctrine of judicial estoppel, sua sponte, to bar HAMTC's counterclaim for an order to compel arbitration of a grievance filed pursuant to a collective bargaining agreement. We reverse and remand to the district court for consideration of whether the grievance is arbitrable.

## I.

HAMTC is a labor organization composed of approximately fifteen different unions. Each of these individual union affiliates represents a distinct group of craft employees at Rockwell Hanford Operations. HAMTC is the exclusive bargaining agent for all union represented employees working at the Hanford site.

Since 1977, HAMTC and Rockwell have been parties to a collective bargaining agreement. In 1982, Rockwell and HAMTC officials began negotiating for the creation of a new classification of workers to undertake the decontamination and decommissioning ("D & D") of certain installations. The impetus for the new work category came from a Department of Energy request for D & D at a cost lower than that for maintaining installations. The D & D job classification and definition was adopted by HAMTC and Rockwell and became part of the existing collective bargaining agreement ("CBA") on December 14, 1982. Under the agreement, D & D work was allocated to Local I–369 of the Oil, Chemical and Atomic Workers Union ("OCAW"). A new CBA, negotiated in 1983, incorporated the D & D classification. Apparently, the new classification over-lapped with the job classifications of several other HAMTC member unions.

In August 1983, United Brotherhood of Carpenters and Joiners Local 2403 ("Carpenters") filed a grievance against Rockwell alleging that the assignment of D & D work to OCAW violated the CBA. After Rockwell denied the grievance, Carpenters filed suit in state court—purportedly in the name of HAMTC—to compel arbitration. Rockwell thereafter removed the action to district court.

Rockwell argued in court that, since HAMTC is the sole bargaining agent for its affiliate unions under the CBA, it would be an unfair labor practice for it to proceed to arbitration with the Carpenters rather than HAMTC. In support of Rockwell's position, Pete J. Todish, President of HAMTC, submitted an affidavit dated April 16, 1984. Todish stated in paragraph 3 of the affidavit that "HAMTC is not a party to this litigation and has never authorized Local 2403 to file, participate in, or otherwise initiate litigation against Rockwell in HAMTC's name. Local 2403 and its attorney Daryl Jonson usurped HAMTC's name in these proceedings without proper authority." Todish also stated in paragraph 5 that "[w]ith respect to the allocation of decontaminating and decommissioning work to the Oil, Chemical, and Atomic Workers International Union, Local I 369, Rockwell has observed and is continuing to observe its contractual obligations under the Collective Bargaining Agreement signed by it and HAMTC."

The district court held that, in construing the arbitration clause, it could look to the rest of the CBA to establish the clause's meaning. *Hanford Atomic Metal Trades Council v. Rockwell Int'l Corp.*, 607 F.Supp. 19, 21 (E.D.Wash.1984) ("*HAMTC I*"). Without referring to paragraph 5 of Todish's affidavit, the court found that the CBA "clearly contemplates the necessity of [HAMTC] authorization and involvement" to proceed with a grievance. *Id.* Because the affidavit asserted that HAMTC had not given authorization, the court granted Rockwell's motion for summary judgment

"for lack of a necessary party in these proceedings." *Id.* at 22.

A separate grievance was filed on May 25, 1984, by an employee of another union, i.e. Local Union 598, Plumbers and Pipefitters ("Plumbers"). The employee grieved the "misassignment of work being performed on the Rockwell Hanford Project, by the D & D workers" including "removal of pipe, pipe hangers and valves." After the Plumbers proceeded through proper channels as specified in the CBA—and after an impasse was reached—HAMTC itself requested arbitration on July 31, 1985. Rockwell refused and brought this action for declaratory and injunctive relief to prevent arbitration. *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council,* No. C–85–710–RJM (E.D.Wash. March 9, 1987) ("*HAMTC II*"). *HAMTC II* was argued before the same district court judge who heard *HAMTC I.*

Both Rockwell and HAMTC filed motions for summary judgment. Rockwell requested an order enjoining arbitration and HAMTC counterclaimed for an order directing Rockwell to proceed to arbitration. HAMTC President Todish submitted two affidavits in support of HAMTC's motion.

The district court, sua sponte, invoked the doctrine of judicial estoppel. The court found that, because the statement in paragraph 5 of Todish's first affidavit in *HAMTC I* regarding Rockwell's compliance with the CBA was "inconsistent" with Todish's later affidavits and HAMTC's position in *HAMTC II,* HAMTC was estopped from asserting its contradictory position in the later action. HAMTC's proffered explanation made in both a telephonic conference and briefing did not persuade the court otherwise. The court thus granted Rockwell's motion for summary judgment. HAMTC timely appealed. This court has jurisdiction under 28 U.S.C. § 1291.

## II.

This court reviews de novo a district court's grant of summary judgment. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractor's Ass'n,* 809 F.2d 626, 629 (9th Cir. 1987). *See also, Arizona v. Shamrock Foods Co.,* 729 F.2d 1208, 1211 (9th Cir. 1984), *cert. denied,* 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985) (de novo standard applied to summary judgment based in part on judicial estoppel).

## III.

Unlike collateral estoppel,[1] res judicata,[2] and equitable estoppel,[3] judicial estoppel focuses exclusively on preventing the use of inconsistent assertions that would result in an "affront to judicial dignity" and "a means of obtaining unfair advantage." *Shamrock Foods,* 729 F.2d at 1215 (quoting *Scarano v. Central R. Co. of New Jersey,* 203 F.2d 510, 513 (3rd Cir. 1953)). The doctrine is intended to protect against a litigant playing "fast and loose with the courts" by asserting inconsistent positions. *See e.g., id.; Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598–99 (6th Cir.1982); *Sperling v. United States,* 692 F.2d 223, 227 (2d Cir.1982) (Van Graafeiland, J., concurring), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir.1982).

The judicial estoppel doctrine, however, is applied differently among the circuits. *See generally,* Note, *Judicial Estoppel: The Refurbishing of a Judicial*

---

1. Collateral estoppel prevents a party from relitigating an issue based on specific factual matters that have been previously adjudicated by a court. Thus this doctrine prevents repetitive litigation. *See e.g., Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 598 (6th Cir.1982).

2. Res judicata bars future claims arising from facts that have already been the subject of litigation. Its purpose is to ensure that all possible claims will be brought and adjudicated in the same action.

3. Although equitable estoppel is closer to judicial estoppel than are the other doctrines, it is broader and focuses principally on the relationship among the parties. As such, a party will be equitably estopped from asserting an inconsistent position whenever the adverse party has detrimentally relied on it. *See e.g., Edwards,* 690 F.2d at 598–99.

*Shield,* 55 Geo.Wash.L.Rev. 409 (1987); Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel,* 80 Nw.U.L.Rev. 1244 (1986). Although the Ninth Circuit has considered judicial estoppel claims twice before and impliedly approved the use of the doctrine in limited circumstances,[4] we have not had the occasion to consider the various approaches and limitations on the doctrine. We need not explore them here either because we hold the application of judicial estoppel in the context of HAMTC's arbitration request to be inappropriate for other reasons.

 The role of the courts in resolving labor disputes is extremely narrow: judicial inquiry must go only to the arbitrability of disputes, and not to the merits of the underlying dispute. *United Steelworkers of Am. v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). The Supreme Court in *AT & T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) recently reaffirmed this principle:

> in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator.

*Id.* at 649–50, 106 S.Ct. at 1419. In reaching a decision on arbitrability, a court must examine the CBA—most specifically, the arbitration clause—in order to determine the intent of the contracting parties. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). The judicial inquiry "must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance...." *Id.* Moreover, there exists a strong presumption of arbitrability for disputes arising under CBAs with arbitration clauses " 'unless it may be said with positive assurance that the arbitration clause' " was not intended to cover the asserted dispute. *AT & T Tech.,* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53).

Thus, when the district court was presented in *HAMTC II* with Rockwell's request for an order enjoining arbitration and HAMTC's counterclaim for an order to compel arbitration, it should have looked only to the CBA and the arbitration clause to determine whether Rockwell and HAMTC intended to arbitrate grievances over work assignments. Instead, it considered Todish's statement in paragraph 5 which broadly asserted Rockwell's compliance with the CBA. Paragraph 5, however, concerns the underlying merits of the dispute and as such is beyond the scope of the district court's scrutiny. Moreover, the district court's speculation of whether paragraph 5 was inconsistent with HAMTC's position in *HAMTC II,* and its efforts to extract an explanation from HAMTC regarding the apparent inconsistency, necessarily led the court into an inquiry regarding Rockwell's compliance with its obligations under the CBA. This was error, since the Supreme Court has expressly stated that questions of actual compliance are for the arbitrator, not the courts. *See e.g., AT & T Tech.,* 475 U.S. at 650, 106 S.Ct. at 1419.

Because judicial estoppel should not have been invoked to bar HAMTC's claim, we reverse and remand to the district court for consideration of whether the grievance is arbitrable.

**REVERSED AND REMANDED.**

---

4. *See Arizona v. Shamrock Foods Co.,* 729 F.2d 1208 (9th Cir.1984), *cert. denied,* 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985); *Garcia v. Andrus,* 692 F.2d 89 (9th Cir.1982).