Anthony **YERKOVICH, et al., Plaintiffs,**

v.

**MCA INC., et al., Defendants.**

**No. CV 94–3927 ABC (AJWx).**

United States District Court, C.D. California.

Feb. 24, 1997.

Joseph A. Yanny, Mary L. Grieco, Samuel J. Lorowitz, Fischbach, Perlstein, Lieberman & Yanny, for Plaintiffs.

Gail Migdal Title, Steve Cochran, Jeffrey I. Abrams, Katten Muchin & Zavis, Steve Drapkin, Law Offices of Steve Drapkin, Los Angeles, CA, for Defendants.

ORDER RE: (1) Defendants' Motion for Judgment on the Pleadings; and (2) Defendants' Alternative Motion for Summary Judgment

COLLINS, District Judge.

Defendants' motion for judgment on the pleadings and alternative motion for summary judgment came on regularly for hearing before this Court on February 24, 1997. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that the motions are GRANTED in part and DENIED in part.

## I. Procedural Background

On June 10, 1994, Plaintiffs ANTHONY YERKOVICH and BUFFALO PRODUCTIONS, INC. ("Plaintiffs") filed a Complaint against Defendants MCA INC. and UNIVERSAL CITY STUDIOS, INC. ("Universal" or "Defendants"). Plaintiffs filed a First Amended Complaint ("FAC") on October 3, 1994. In the FAC, Plaintiffs brought the following causes of action against Defendants: (1) copyright infringement; (2) declaratory relief; (3) breach of contract (federal); (4) breach of contract (state); (5) breach of fiduciary duty; (6) breach of the implied covenant of good faith and fair dealing; (7) antitrust violations; (8) imposition of a constructive trust; and (9) an accounting. On April 19, 1995, the Court dismissed the FAC's seventh claim for relief (antitrust violations) and stayed the action pending an arbitration to determine which claims in the FAC were subject to arbitrability.[1]

On November 3, 1995, Arbitrator Edgar A. Jones, Jr. rendered his decision concerning

---

1. In addition, the Court denied without prejudice a Motion by the Writers Guild of America for leave to file a Complaint in Intervention.

the arbitrability of the FAC's claims. *See* Arbitration Opinion and Award, WGA Case No. 94–SR–10 (Exhibit B in Support of Defendants' Motion).[2] Essentially, Arbitrator Jones found that to the extent that Plaintiffs' claims are based on an alleged breach of the Writers Guild of America/Universal Collective Bargaining Agreement ("CBA"), the claims are arbitrable. Further, Arbitrator Jones found that to the extent that Plaintiffs' claims are not based on rights derived from the CBA, the claims are not arbitrable. Pursuant to the CBA, the parties to this arbitration were Defendant Universal Studios and the WRITERS GUILD OF AMERICA ("WGA"). Plaintiffs were not a party to the arbitration. Regardless, the arbitrator (and the parties) allowed Plaintiffs to submit briefs to the arbitrator.

On March 4, 1996, Plaintiffs filed a Second Amended Complaint ("SAC"). In the SAC, Plaintiffs brought claims for: (1) a declaration that the "arbitrability arbitration" is not binding on this Court; (2) breach of Plaintiffs' agreement with Defendants and the CBA; (3) breach of fiduciary duty; (4) breach of the implied covenant of good faith and fair dealing; (5) fraud; (6) copyright infringement; (7) a declaration of copyright ownership and rights; (8) imposition of a constructive trust; and (9) an accounting. On April 8, 1996, the Court lifted the stay of the action.

Meanwhile, on March 26, 1996, Universal Studios filed a Petition to Confirm Arbitration Award. *See Universal City Studios, Inc. v. Writers Guild of America, West, Inc.,* Case No. CV 96–2135 ABC (Ex). The WGA did not oppose this Petition. On May 14, 1996, the parties to the arbitration filed a Stipulation for Entry of Final Judgment Confirming the Arbitration Award. This stipulation was served on the Plaintiffs in the instant case. On May 15, 1996, the Court signed the judgment confirming the November 3, 1995 arbitration award.

On May 14, 1996, Defendants filed a motion to dismiss the first and second claims in Plaintiffs' SAC, essentially asserting that these claims were precluded either by the Court's prior Order or by the November 3, 1995 arbitration award. On June 24, 1996, the court dismissed Plaintiffs' first and second claims without prejudice.

On July 24, 1996, Plaintiffs filed a Third Amended Complaint ("TAC"), which joined the WGA as an additional Defendant. In the TAC, Plaintiffs bring claims for: (1) breach of the duty of fair representation (against WGA); (2) declaratory relief (against all Defendants); (3) breach of contract (against Universal); (4) breach of contract (against Universal); (5) breach of fiduciary duties (against Universal); (6) breach of the implied covenant of good faith and fair dealing (against Universal); (7) fraud (against Universal); (8) copyright infringement (against Universal); (9) copyright infringement (against Universal); (10) declaratory relief (against all Defendants); (11) a constructive trust (against Universal); and (12) an accounting (against Universal).

On September 12, 1996, Universal filed a motion to dismiss the entire TAC. On November 28, 1996, the Court granted Defendants' motion in part and dismissed Plaintiffs' second, fifth, sixth, and seventh claims with prejudice. The Court denied Defendants' motion as to Plaintiffs' third, fourth, eighth, ninth, tenth, eleventh, and twelfth claims ("remaining claims").[3]

On January 7, 1997, Defendants filed an Amended Motion for Judgment on the Pleadings, along with an Alternative Motion for Summary Judgment, directed towards Plaintiffs' unconscionability claims as well as the other remaining claims. On January 13, 1997, Plaintiffs filed their Oppositions to both Motions. On January 16, Defendants filed Replies in support of both Motions.

## II. Factual Background

The facts underlying this case were set out more fully in the Court's April 19, 1995 and June 26, 1996 Orders. The factual background is well-known to the parties and need not be repeated here. However, the Court will recite its Findings of Fact pertinent to Defendants' Alternative Motion for Summary Judgment:

---

2. In its June 24, 1996 Order, the Court took judicial notice of the Arbitration Opinion and Award pursuant to Federal Rule of Evidence 201.

3. The First Claim against Defendant WGA was dismissed by stipulation.

1. In their TAC, filed more than two years after the initial Complaint, Plaintiffs for the first time alleged claims of unconscionability with respect to the Universal–Yerkovich contract. The allegations related to Plaintiffs' unconscionability claims are contained in Paragraph Six (General Allegations—Background Facts) and Paragraphs 49 and 51 (Third Claim—Breach of Contract Based on Failure to Pay Net Profits) of the TAC.

2. Paragraph Six of the TAC alleges:

In or about the summer of 1983, Plaintiffs entered into a contract with Universal, which contract was ultimately amended several times thereafter ... for Yerkovich's writing, producing, and/or directing services. Plaintiffs are informed and believe, and based thereon allege, that the Yerkovich/Universal Agreement is nothing but the standard form contract with standard riders attached which contract and riders were drafted by Universal and presented to Plaintiffs as a "take it or leave it" deal.

3. Paragraphs 49—51 of the TAC allege: (1) that "Plaintiffs were given Universal's standard form agreement, drafted by Universal and presented to Plaintiffs, who were in a substantially weaker bargaining position, on a 'take it or leave it' basis." [TAC ¶ 49];

(2) that "the Yerkovich/Universal Agreement is a contract of adhesion, containing several clauses that are unenforceable for the reason that same were unconscionable at the time the agreement was made, in that ... Plaintiffs had no choice but to accept Universal's unilaterally imposed harsh and oppressive terms since all bargaining between the parties was foreclosed based upon Universal's 'take it or leave it' position, and the agreement was reached as a result of Plaintiff's impaired representation." [TAC ¶ 50]; and

(3) that the application of the unconscionable terms in the Yerkovich/Universal Agreement should be limited so as to avoid an unfair an unconscionable result to Plaintiffs. [TAC ¶ 51].

4. Paragraph B(c) of the "net profits" provision of the Universal–Yerkovich contract provides:

(c) **Presumption of Correctness:** All Accountings and all items contained therein shall be deemed correct, and shall be conclusive and binding upon Participant upon the expiration of one year from the date rendered and the inclusion of information or items in an accounting which had appeared in a previous accounting shall not render any such information or item contestable or recommence the running of the period of one year with respect thereto; however, if Participant delivers a written notice to Producer, objecting to one or more items of an accounting within the one year period after rendition, and if such notice specifies in detail the items to which Participant objects and the nature of and reasons for Participant's objections thereto, then Participant may question the particular item objected to notwithstanding expiration of the one year period, but only for the particular reasons of which Participant gave Producer written notice, and not after expiration of the period of the applicable statute of limitations established by law.

5. Paragraph B(d) of the "net profits" provision of the Universal–Yerkovich contract provides:

(d) **Examination of Books:** Participant may cause Producer's books and records of account to be examined, to the extent that they have not become incontestable, by either (I) a national firm of certified public accountants of a stature equal to Price Waterhouse & Company or Haskins and Sells, or (ii) such other first-class accountants as Producer may in its sole discretion approve.

6. The parties dispute whether Plaintiffs ever requested an accounting under Paragraph B(d) of the "net profits" provision of the Universal–Yerkovich contract.

7. Paragraph Six of the Yerkovich–Universal contract concerns the "material written by the artist hereunder" and reads as follows:

(A) All material written by Artist hereunder shall be written by Artist as an employee of Lender pursuant to an employment agreement between Artist and Lender and within the scope of Artist's

employment by Lender. Lender hereby assigns to Producer all rights in all such material, including the copyrights therein. Producer, as the assignee of Lender shall be the owner of all rights therein (except for rights that producer is not permitted to acquire under the WGA Agreement). If Lender and/or Artist is entitled to separation of rights, Producer may acquire from Lender and/or Artist any rights reserved to Lender and/or Artist under the WGA Agreement, separately or altogether, for the minimum compensation and subject to the conditions prescribed in the WGA Agreement; however, if the applicable writing fee hereunder is at least the "upset price", then Producer shall be entitled to all rights in such material and Artist and Lender shall execute Producer's standard upset price agreement with respect thereto, attached hereto as EXHIBIT C, for a separate consideration of $1.00 to Lender. Subject to the foregoing and any applicable Guild Agreement, Producer shall own in perpetuity all results and proceeds of Artist's services hereunder with the right to make such changes therein and uses thereof as Produce may determine in its sole discretion. Lender and Artist shall execute, if Producer requests, Producer's Standard "Loanout Contract–Freelance Film Television Writer" with respect to each writing assignment hereunder for which Producer makes such request.

8. The parties dispute whether Exhibit "C" to the Universal–Yerkovich contract was ever executed. The parties further dispute whether separate consideration was ever accepted for Exhibit "C." Paragraph 2 of Exhibit "C" provides:

2. **Separation of Rights; Upset Price:** Pursuant to Article 16B of the Producer–Writers Guild of America 1977 Theatrical and Television Basic Agreement ("the WGA Agreement"), Writer may be entitled to "Separation of Rights" in the work, in which case, certain rights in the work are reserved to Writer. Since under the Loanout Agreement Producer is paying to Lender an amount at least equal to the "upset price" referred to in said Article 16B as compensation for Writer's services, Producer has the right to acquire all such reserved rights in the work. Lender warrants that it is paying Writer for said "upset price," and that Lender has acquired from Writer all rights in the work which would otherwise be reserved to Writer.

9. Paragraph 3 of Exhibit "C" provides:

3. **Grant of All Rights:** Lender grants to Producer all rights in the work which Producer has not acquired under the Loanout Agreement, and Producer is therefore the sole owner of the work for all purposes: Without derogating from the generality of the foregoing, the rights granted hereunder include: (a) the unlimited right to use the work or any part of the work for all theatrical, motion picture, radio, merchandising, publication, dramatic stage and phonograph record purposes, and the right to produce, exploit, publish and perform sequels and remakes in any of the foregoing fields and to exhibit the work in Supplemental Markets as defined in Article 51 of the WGA Agreement; (b) all other now or hereafter existing rights (except those Producer acquires under the Loanout Agreement) of every kind and character pertaining to the work, whether or not said rights are now known, recognized or contemplated; and (c) the complete, unconditional and unencumbered title in and to the work and the copyrights thereof (including all renewals and extensions of copyright) for all purposes.

## III. Discussion

### A. Rule 12(c) Standard

The standard that a court applies on a Rule 12(c) motion is basically the same as that applied on Rule 12(b)(6) motions.[4] William W. Schwarzer et al., *Federal Civil Pro-*

---

4. A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

cedure Before Trial § 9:335 (1995). Therefore, a judgment on the pleadings should be granted when, "even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law." *Id.* (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989)). Furthermore, a court must accept as true all material facts alleged in the complaint, and must draw all reasonable inferences in the light most favorable to the nonmoving party. *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989), *cert. denied*, 493 U.S. 1079, 110 S.Ct. 1134, 107 L.Ed.2d 1039 (1990).

"Rule 12(c) does not specifically authorize a motion for judgment on the pleadings directed to less than the entire complaint. Nor does it specifically prohibit such a motion." Schwarzer et al., *supra*, at § 9:340. Therefore, a court has discretion to permit or deny "partial" judgment on the pleadings.

## B. Summary Judgment Standard

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*,

A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986); *see also Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir.1980) (finding that the complaint must be read in the light most favorable to the plaintiff). However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir.1968), *cert. denied*, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991), *overruled on other grounds by Central Bank of Denver, N.A. v. First Interstate Bank of*

440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)). This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). Furthermore, the court must view the evidence presented to establish these elements "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325,

*Denver, N.A., et al.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). A court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279 (9th Cir.1986), *abrogated on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

Lastly, a Rule 12(b)(6) motion "will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled." Schwarzer, et al., *Civil Procedure Before Trial* § 9:230. "It need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C.Cir.1985); *see also Doss v. South Central Bell Telephone Co.*, 834 F.2d 421, 425 (5th Cir.1987) (demand for improper remedy not fatal if claim shows plaintiff entitled to different form of relief).

106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... *must set forth specific facts showing* that there is a genuine issue for trial." Fed. R. Civ.P. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Id.* at 248, 106 S.Ct. 2505; *Griffeth v. Utah Power & Light Co.,* 226 F.2d 661, 669 (9th Cir.1955).

## C. Analysis

Although they were filed as two separate motions, Defendants' Amended Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment are inextricably intertwined. Therefore, the Court will not address each motion separately. Rather, the Court will address the viability of Plaintiffs' general unconscionability claims as well as the other remaining claims, and apply the necessary standard(s) to each in turn.

### 1. Plaintiffs' Unconscionability Claims

As noted above, Plaintiffs claim that the Yerkovich–Universal Contract was unconscionable as of the time of its making in 1983. In this action, Plaintiffs have sought to use

these general allegations of contract unconscionability in order to invalidate terms of the contract so as to shield their claims from dismissal under Rule 12(b)(6).[5] *See* November 28, 1996 Order pp. 12–17, 21–22.

In their Amended Motion for Judgment on the Pleadings, Defendants contend that Plaintiffs' unconscionability claims are barred by the statute of limitations. Specifically, Defendants point out that Plaintiffs' contract was executed in 1983.[6] Plaintiffs' Complaint was filed on June 10, 1994, and the unconscionability claims were first raised in the TAC filed in July 1996. Defendants contend that an unconscionability claim arises at the time the allegedly unconscionable contract is made, and that Plaintiffs' claim is time-barred by a four-year statute of limitations. For reasons discussed below, the Court agrees that Plaintiffs' unconscionability claims are barred under the relevant statute of limitations.

### a. Accrual of an Unconscionability Claim

An unconscionability claim accrues at the moment when the allegedly unconscionable contract is formed. Under California law, unconscionability of a contract or a contract clause is determined based on the law and facts at the time of the agreement. *See* Cal. Civ.Code § 1670.5; *American Software, Inc. v. Ali,* 46 Cal.App.4th 1386, 1391, 54 Cal.Rptr.2d 477 (1996) ("The critical juncture for determining whether a contract is unconscionable is the moment it is entered into by both parties—not whether it is unconscionable in light of subsequent events."); *Brobeck, Phleger & Harrison v. Telex Corp.,* 602 F.2d 866, 875 (9th Cir.1979) (applying California law, unconscionability is "determined with reference to the time the contract was made and cannot be resolved by hindsight"). In this case, the Court finds that Plaintiffs' unconscionability claim accrued when they entered into the contract with Defendants in 1983.[7]

---

5. Plaintiffs have used their unconscionability claims for offensive purposes, not as a defense to a counterclaim asserted by Defendants.

6. The Yerkovich–Universal contract is dated June 7, 1983. [Exhibit A in Support of Amended Motion for Judgment on the Pleadings].

7. The policy concerns underlying the statute of limitations involve the need to prevent plaintiffs from sitting on their rights, as well as the need to avoid prejudice to each side from loss of evidence due to the passage of time. Based on these concerns and the relevant California statutory and case law, "it must be concluded that the

### b. Applicable Statute of Limitations

■ The parties have not cited, and the Court has not found, any California authority dealing with the precise issue of whether an offensive claim of unconscionability is barred by Section 337(3) of the California Code of Civil Procedure, or any other statute of limitations.[8] However, the Court is persuaded that out-of-state authority deciding the issue under similar state statutes should apply to this case. For example, in *35 Park Ave. Corp. v. Campagna*, 48 N.Y.2d 813, 424 N.Y.S.2d 123, 399 N.E.2d 1144 (1979), the plaintiff sought to rescind a lease on grounds of unconscionability after the applicable statute of limitations had run. The court ruled that an unconscionability claim accrues at the execution of the lease and rejected plaintiff's contention that an unconscionable contract is a "continuing wrong." *Id.*, 399 N.E.2d at 1145. Also, in *Tucson Elec. Power v. Westinghouse Elec. Corp.*, 597 F.Supp. 1102 (D.Ariz.1984), plaintiff sued on common law tort and contract theories and defendant moved for summary judgment based on contract provisions limiting warranties and damages. The plaintiff responded by claiming that the contract provisions were unconscionable. The Court held that "the issue of unconscionability accrues for statute of limitations purposes at the time the contract is entered" and that the plaintiff was time-barred from attempting "offensively" to partially rescind its contract, even though it was not directly bringing a rescission claim in its complaint. *Id.* at 1104–5.

Defendants contend that Plaintiffs' unconscionability claim seeks a partial rescission of their contract and, hence, should be governed by Section 337(3) of the California Code of Civil Procedure. In relevant part, that section prescribes a four-year statute of limitations for an "action based on the rescission of a contract in writing." Cal.Civ.Proc.Code § 337(3). The section also states that the "time begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred." Id.

Plaintiffs counter by asserting that their Fourth Claim is for breach of contract, not rescission. *See* Opposition to Motion for Judgment on the Pleadings, p. 15. Notwithstanding this assertion, the Court notes that Plaintiffs have avoided dismissal of their Fourth,[9] Eighth, Ninth, and Tenth Claims only as a result of the unconscionability allegations. *See* November 28, 1996 Order. The Court based its decision not to dismiss these claims solely on the possibility that, if Paragraph Six of the Yerkovich–Universal contract was unconscionable, the assignment of all rights and copyrights in the work might be invalidated or rescinded by the Court.[10] Plaintiffs specifically requested such an equitable remedy, which in effect would require a partial rescission of the contract.[11] *See Tucson Elec. Power*, 597 F.Supp. at 1105 (when plaintiff used a theory of unconscionability for offensive purposes, the court found that plaintiff was attempting to partially rescind a contract for which it received consideration).

---

issue of unconscionability accrues for statute of limitations purposes at the time the contract is entered." *Tucson Electric Power Co. v. Westinghouse Electric Corp.*, 597 F.Supp. 1102, 1104–05 (D.Ariz.1984). *See also 35 Park Ave. Corp. v. Campagna*, 48 N.Y.2d 813, 424 N.Y.S.2d 123, 399 N.E.2d 1144, 1145 (1979) ("The execution of the unconscionable lease is the event giving rise to the claim, notwithstanding that its effect may last the life of the lease.").

Plaintiffs claim that "to the extent that a statute of limitations even exists for an allegation of unconscionability ... the same cannot even begin to run until such time as when the party knew or should have known of the facts giving rise to the allegations of unconscionability." However, Plaintiffs fail to support this argument with any authority whatsoever. The Court finds such a proposition to be without merit.

8. The Court notes, however, that at least one California appellate court has expressly declined to consider the issue of whether a claim based on

unconscionability is subject to any statute of limitations. *See Shadoan v. World Savings and Loan Association*, 219 Cal.App.3d 97, 106–107, 268 Cal.Rptr. 207 (1990).

9. Although the Fourth Claim is for breach of contract, the challenged provision relates solely to copyright.

10. Defendants now assert that Plaintiffs' Eighth and Ninth Claims for copyright infringement are barred because Universal's allegedly infringing activity preceded Plaintiffs' attempted rescission of the copyright assignment clause. This argument was not presented to the Court as part of Defendants' Motion to Dismiss. Further, the issue raised by this argument is not necessary to the Court's determination of the present Motions.

11. *See* TAC ¶ 51.

In *Tucson Elec. Power, supra*, the court ruled that a claim of unconscionability was barred by the Arizona six-year statute of limitations for claims based on a written contract. In contrast, the California statute of limitations for claims based on a written contract is only four years. *See* Cal.Civ.Proc. Code § 337(1). Additionally, California's catch-all statute of limitations is also four years. *See* Cal. Civ. Pro.Code § 343 ("An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."). Based upon the reasoning of the *Tucson Elec. Power* court, the Court believes that Cal. Civ. Pro.Code § 337(1) applies to Plaintiffs' unconscionability claims based on their written contract with Defendants. However, whether the applicable statute of limitations is drawn from California Code of Civil Procedure Section 337(1), 337(3), or 343, the applicable statutory period for an unconscionability claim would be four years. Even if the Court assumes that Plaintiffs' unconscionability claims "relate back"[12] to the June 10, 1994 filing of their initial Complaint, they were raised approximately eleven years after Plaintiffs entered into the allegedly unconscionable contract on June 7, 1983. Under the applicable statute of limitations, such claims are clearly time-barred.[13] Accordingly, Defendants' Amended Motion for Judgment on the Pleadings is GRANTED with respect to Plaintiffs' unconscionability claims.

**12.** *See* Fed.R.Civ.P. 15(c)

**13.** The Court is not persuaded by Plaintiffs' argument that "numerous courts have permitted parties to litigate the issue of unconscionability many years after the time the subject contract was entered into." Opposition to Motion for Judgment on the Pleadings, p. 16. None of the cases cited by Plaintiffs in support of this proposition expressly considered the issue currently before this court—whether an offensive unconscionability claim is subject to a statute of limitations and, if so, when does the claim accrue. Further, many of the cases simply do not support the factual propositions for which they are cited. For example, in *Vockner v. Erickson*, 712 P.2d 379, 380 (Alaska 1986), plaintiff sued for reformation of an allegedly unconscionable contract *four-and-a-half* years after the contract was executed, before the expiration of the applicable statute of limitations. Plaintiff did not sue *eleven* years after the contract date as claimed by Plaintiffs.

The Court also rejects Plaintiffs' contention that Defendants "waived" any statute of limitations defense. In support of this contention, Plaintiffs offer a December 30, 1991 letter sent by Plaintiffs' prior attorney. *See* Exhibit D in Opposition, p. 22. This letter purports to reflect an oral waiver. The Court notes that the purported waiver fails as a matter of law because Defendants never signed a written waiver. *See* Cal.Civ.Proc.Code § 360.5 ("No waiver shall bar a defense to any action that the action was not commenced within the time limited by this title unless the waiver is in writing and signed by the person obligated").

### 2. Plaintiff's Third Claim for Breach of Contract Based on Failure to Account for "Net Profits"

In its November 28, 1996 Order, the Court denied Defendants' Motion to Dismiss Plaintiffs' Third Claim for breach of contract based on Defendants' failure to account to Plaintiffs for "net profits." In their present Motions, Defendants renew their attack on Plaintiffs' Third Claim by arguing that the claim is barred in whole or in part by: (1) the contractual audit remedy; and/or (2) the one-year time limit within which to challenge an accounting. For reasons discussed below, these arguments are without merit.

#### a. The Contractual Audit Remedy

Defendants assert that Plaintiffs have a "mandatory obligation" to utilize the accountant's audit provision in the Yerkovich–Universal contract if they wish to examine Universal's books to determine whether "net profits" are due and owing. They argue that this provision is similar in operation to a mandatory arbitration clause. However, this argument is simply not supported by the terms of the contract. Paragraph B(d) of the "net profits" contract provision states: "Participant *may* cause Producer's books and records of account to be examined..." (emphasis added). The "may" language clearly indicates that this audit process is optional rather than mandatory,[14] and failure

**14.** "The word 'may' is defined: 'have permission to ... have liberty to ... be in some degree likely to ... use in auxiliary function expressing purpose or expectation ... contingency ... or concession ....' 'May' is not usually construed as creating a requirement but is used to signify the ability to choose or the power to act." *Gyler v. Mission Ins. Co.*, 10 Cal.3d 216, 219, 110 Cal. Rptr. 139, 514 P.2d 1219 (1973) (citations omitted).

to invoke the audit process will not bar a future legal claim.[15]

### b. The Time Limit for Invoking the Audit Remedy

■ Defendants assert that, even if Plaintiff's Third Claim is not barred in its entirety for failure to invoke the audit remedy, it must be dismissed in significant part because of the time limit imposed by the contract to any challenge of an accounting. Again, this argument is not supported by the express terms of the contract. Specifically, the contract provides that "[a]ll accountings and all items contained therein shall be deemed correct, and shall be conclusive and binding upon [Plaintiffs] upon the expiration of one year from the date *rendered*" unless within the one year period Plaintiffs deliver "a written notice to [Defendants], objecting to one or more items of an accounting within the one year period after *rendition,* and if such notice specifies in detail the items to which [Plaintiffs] object[ ] and the nature of and reasons for [their] objections thereto ..." [Paragraph B(c) of the "net profits" provision] (emphasis added).

As Defendants point out, the relevant legal issue is whether the binding one-year contractual presumption of correctness is as applicable to the non-rendering of an accounting statement as it is to the rendering of an allegedly incorrect statement.[16] The clear language of the contract and common sense dictate that it is not. First, the language addresses only accountings that have been *rendered.* There is no mention of accountings that have not been rendered. Second, the one-year period begins to run upon *rendition* of the accounting for the applicable period. The contract does not state that the one-year period is triggered upon the non-rendition of an accounting, or expiration of the time in which an accounting should have been rendered if payments were owed. Fi-

nally, the contractual requirements for a notice objecting to an accounting show that the contract provisions cannot be applied to a "non-accounting." Specifically, Paragraph B(c) of the contract's "net profits" provision requires that the Plaintiffs "specif[y] in detail" the items to which they object and give the nature of and reasons for those objections. Common sense dictates that Plaintiffs cannot specify in detail and lodge objections to items which have never been presented to them. Therefore, the contractual time limit to contest an accounting does not apply to a "non-accounting," or an accounting that has never been rendered.

For the reasons noted above, Defendants' Amended Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment are DENIED with respect to Plaintiffs' Third Claim.

### 3. Plaintiffs' Fourth Claim for Breach of Contract Based on Exhibition of Miami Vice Live Stage Show

In its November 28, 1996 Order, the Court denied Defendants' Motion to Dismiss Plaintiffs' Fourth Claim on the sole ground that Plaintiffs alleged that the contract, and certain specific terms therein, were unconscionable. *See* November 29, 1996 Order, pp. 12–17. Now that Defendants have successfully challenged the unconsconscionability claims, Plaintiffs' Fourth Claim must fail unless the Court adopts Plaintiffs' remaining arguments. For reasons articulated below, Plaintiffs' arguments are without merit.

■ Plaintiffs argue that the Fourth Claim is not entirely dependent upon a finding of unconscionability. Rather, Plaintiffs contend that a fair interpretation of the separate Yerkovich–Universal agreement shows that Defendants were in breach of that agreement. [*See* Opposition to Judgment on the Pleadings, p. 13]. Further, Plaintiffs ar-

---

**15.** Defendants argue that use of the term "may" in the context of describing a party's right to invoke a grievance procedure has been interpreted as providing an option between arbitration and not asserting the claims, not the option between arbitration and court litigation. In light of the strong federal policy in favor of arbitration, this rationale has been held to apply to arbitration clauses. However, Defendants cite no authority indicating that such a conclusion should

apply outside the arbitration context to audit provisions such as the one at issue. The strong public policy supporting arbitration is inapplicable to the interpretation of a contract that contains no arbitration provisions.

**16.** Defendants acknowledge that they have never made any accountings or payments of "net profits" to Plaintiffs. *See* Amended Motion for Judgment on the Pleadings, p. 2.

gue that the separate Yerkovich–Universal agreement "delineates the scope of rights reserved to Yerkovich as well as the limited field of use rights licensed to Universal." Id. at p. 4. The Court has twice rejected this argument and does so again.[17]

The contract clearly indicates that if any rights were reserved to Plaintiffs, they were reserved under the WGA Collective Bargaining Agreement. [See Yerkovich–Universal Contract, ¶ 6]. The contract does not contain a separate statement of the scope of any rights reserved to Plaintiffs. The contract assigns to Defendants all rights not protected by the WGA agreement and, in so doing, merely alludes to the rights potentially reserved to Plaintiffs under that Agreement. Id. The scope of such reserved rights, if any, can only be determined by interpreting the WGA Collective Bargaining Agreement.[18]

The Court will not engage in an interpretation of the WGA Collective Bargaining Agreement for two independent reasons. First, if Plaintiffs' Fourth Claim requires interpretation of the WGA Collective Bargaining Agreement, it is preempted by Section 301 of the Labor Management Relations Act ("LMRA"). See Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401, 1408 (9th Cir.1991), cert. denied, 508 U.S. 959, 113

S.Ct. 2927, 124 L.Ed.2d 678 (1993). If the Court were to accept the theory that certain rights were not acquired by Defendants because they were reserved to Plaintiffs under the WGA Agreement, the court would have to inquire which rights were assigned by contract and which were reserved under the Agreement. Resolution of the Fourth Claim, therefore, would necessarily turn on particular terms (i.e. "separation of rights") defined by the WGA Agreement and require examination of rights and liabilities as delineated in that Agreement. If the Fourth Claim required such interpretation, it would clearly be preempted by Section 301 of the LMRA. See Livadas v. Bradshaw, 512 U.S. 107, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994). This preemption would warrant dismissal or judgment against Plaintiffs on the Fourth Claim.[19]

The fact that Plaintiffs have expressly denied that their claims are based on the WGA Agreement provides a second and alternative reason for refusing to examine rights purportedly reserved under that Agreement. Given Plaintiffs' repeated disavowal of the WGA Agreement, and the success of this argument in rescuing some of their claims from dismissal, Plaintiffs are now judicially estopped [20] from arguing an inherently incon-

---

17. In its June 24, 1996 Order, the Court stated: "Lastly, to the extent that Plaintiffs assert a claim based on their individual contract (and not the CBA), this claim fails because Plaintiffs assigned all rights not protected by the CBA to Defendants." June 24, 1996 Order, p. 18. In its November 28, 1996 Order, the Court reaffirmed this ruling, but denied dismissal based upon the allegations of unconscionability with respect to the copyright assignment clause.

18. Plaintiffs seem to argue that Exhibit C shows the scope of rights that were not acquired by Universal. However, Plaintiffs maintain that Exhibit C was not executed, and hence was not part of their contract with Defendants. If Exhibit C was not part of the contract, then it cannot be used to contradict an express term within the contract. The Court is left, therefore, with the express terms of Paragraph Six: "Lender hereby assigns to Producer all rights in all such material, including the copyrights therein. Producer, as the assignee of Lender, shall be the owner of all rights therein (except for rights that producer is not permitted to acquire under the WGA Agreement)." (emphasis added). Those express terms show that a determination of the scope of rights, if any, that were not acquired by Defendants

would necessarily require interpretation of the WGA Agreement.

19. In their prior motion to dismiss the TAC, Defendants made and Plaintiffs opposed this very argument. Specifically, Defendants argued that Plaintiffs' Fourth Claim was preempted by the LMRA because it required interpretation of the WGA Collective Bargaining Agreement. Plaintiffs countered by asserting that the Fourth Claim was based solely on the Yerkovich–Universal contract and did not require interpretation of the WGA Agreement. The Court gave Plaintiffs the benefit of the doubt and denied Defendants' motion to dismiss the Fourth Claim. Now, however, Plaintiffs raise an argument that clearly would require the Court to interpret the WGA Agreement in order to resolve the Fourth Claim.

20. "Judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." Rissetto v. Plumbers and Steamfitters Local 343, 94 F.3d 597, 600 (9th Cir.1996); accord Yanez v. United States, 989 F.2d 323, 326 (9th Cir.1993); Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir.1990) cert. denied 501 U.S. 1260,

sistent position. Therefore, the Court will not credit Plaintiffs' thinly veiled attempt to use the previously disavowed WGA Agreement as a shield for their Fourth Claim.

Because the Court will not examine the scope of rights allegedly reserved under the WGA Agreement, and because the separate Yerkovich–Universal Contract does not separately define any reserved rights but does state that "all rights in all such material, including the copyrights therein" were assigned to Defendants, the Fourth Claim fails. The Court, therefore, reiterates its original ruling that "to the extent that Plaintiffs assert a claim based on their individual contract (and not the CBA), this claim fails because Plaintiffs assigned all rights not protected by the CBA to Defendants." June 24, 1996 Order, p. 18. Accordingly, Defendants' Alternative Motion for Summary Judgment is GRANTED with respect to the Fourth Claim.

**4. Plaintiffs' Eighth and Ninth Claims for Copyright Infringement and Tenth Claim for Declaration of Copyright Ownership.**

In its November 28, 1996 Order, the Court stated that its ruling on the viability of the Eighth, Ninth, and Tenth Claims would rise or fall on the determination of Plaintiffs' unconscionability claims. Because the Court has ruled that the unconscionability claims are barred under the applicable statute of limitations, the Eighth, Ninth, and Tenth claims must fail. Accordingly, Defendants' Amended Motion for Judgment on the Pleadings is GRANTED with respect to the Eighth, Ninth, and Tenth Claims.

**5. Plaintiffs' Eleventh Claim for Imposition of Constructive Trust and Twelfth Claim for Accounting**

The Plaintiffs have requested that this court impose a constructive trust against Defendants and order Defendants to render an accounting to Plaintiffs (TAC ¶¶ 101–108). These are not actual claims, but remedies, and are only viable if requested in connection with an appropriate claim. Plaintiffs' only remaining claim is their Third Claim for breach of contract. The court notes that, while an accounting for profits [21] may be appropriate under this claim, a constructive trust is probably not.[22] The parties, however, have not had an opportunity to address the viability of these remedies in light of the Court's disposition of all but the Third Claim. Therefore, the Court reserves its ruling on these remedial claims and inquires whether Plaintiffs seek either an accounting for profits and/or a constructive trust in connection with the Third Claim. If so, the Court will require briefing from both parties directed to whether these equitable remedies are appropriate and necessary in a simple breach of contract case. Accordingly, the Court RESERVES JUDGMENT on Defendants' Amended Motion for Judgment on the Pleadings with respect to the Eleventh and Twelfth Claims.

**III. Recommendation**

Based on the foregoing analysis, the Court hereby ORDERS that Defendants' Motions are GRANTED IN PART, and DENIED IN PART. Specifically, the Court ORDERS as follows: (1) Defendants' Amended Motion for Judgment on the Pleadings is GRANTED with respect to Plaintiffs' unconscionability claims; (2) Defendants' Amended Motion for

111 S.Ct. 2915, 115 L.Ed.2d 1078 (1991). Further, Judicial estoppel is intended to protect against a litigant playing "fast and loose with the courts." *Rockwell International Corp. v. Hanford Atomic Metal Trades Council,* 851 F.2d 1208, 1210 (9th Cir.1988) (citations omitted). Judicial estoppel is an equitable doctrine, which may be invoked by the court at its discretion. *See Yanez,* 989 F.2d at 326.

**21.** The Court is uncertain if a court-ordered accounting for profits is necessary in a simple breach of contract case in which an accounting may effectively be obtained through the normal discovery process, or a court order to compel discovery. If necessary, the Court might consider referral of the accounting process to a special master.

**22.** The constructive trust is only used when the defendant has a legally recognized right in a *particular asset* that in good conscience should belong to the plaintiff. *See* 1 Dan B. Dobbs, *Law of Remedies* § 4.3(2), p. 591 (West 1993). Such a remedy would apply to Plaintiffs' former claims for copyright infringement, but would appear inapplicable to a simple breach of contract action.

Judgment on the Pleadings and Alternative Motion for Summary Judgment are DENIED with respect to Plaintiffs' Third Claim; (4) Defendants' Alternative Motion for Summary Judgment is GRANTED with respect to the Fourth Claim; (5) Defendants' Amended Motion for Judgment on the Pleadings is GRANTED with respect to the Eighth, Ninth, and Tenth Claims; and (6) the Court RESERVES JUDGMENT on Defendants' Amended Motion for Judgment on the Pleadings with respect to the Eleventh and Twelfth Claims.

SO ORDERED.